Allen, J.
 

 The sole question in this case is this: Does the giving of a check drawn on a bank wherein there are insufficient funds to pay the same, when the check is given for a past consideration, constitute a
 
 prima fade
 
 violation of Section 710-176 of the General Code? This section reads as follows:
 

 “Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depositary, who, at the time thereof, has
 
 *395
 
 insufficient funds or credit -with such bank or depositary, shall be guilty of a felony, and upon conviction thereof shall be fined not less than fifty dollars and not more than two hundred dollars, or imprisoned in the Ohio state penitentiary for not less than one year nor more than three years or both. As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be
 
 prima facie
 
 evidence of the intent to defraud, and knowledge of insufficient funds in, or credit with, such bank or other depositary. The word ‘credit’ as used herein shall be construed to mean any contract or agreement with the bank or depositary for the payment of such check, draft or order, when presented.”
 

 The court of common pleas granted the motion of counsel for the defendant for a directed verdict of not guilty. The motion was made presumably upon the ground that the statement of the prosecutor showed that the check was given for a past consideration, and that hence there was not and could not be an intent to defraud on the part of the defendant Lowenstein. The full statement of the prosecuting attorney, upon which the motion to take the case from the jury was granted, is as follows:
 

 ‘‘The state expects the evidence in this case to show that on or about the 23d day of June, 1922, and some time prior thereto and some time thereafter, Mrs. McCarthy, along with a number of other women, was employed as a solicitor for the Lowenstein Snappy Garment Company, operated by the defendant Lowenstein; that on the '23d day
 
 *396
 
 of June, there was due her as salary and commission for work she had performed some $15; that in payment of that salary and commission she received a check from the Lowenstein Snappy Garment Company, countersigned by the defendant Lowenstein, and when she presented it for payment at the bank the bank refused payment on the ground that there were insufficient funds to the credit of the Lowenstein Snappy Garment Company to meet the cheek.
 

 “We expect the evidence further to show that at the time other checks were issued to other women in the same manner.
 

 “We expect the evidence to show that there were other women paid in the same way, and their checks met the same fate at the time.
 

 “We also expect the evidence to show beyond any doubt that this fact was known at the time to the defendant, at the time he issued these checks he knew he had insufficient funds to meet the payment. * * *
 

 “We expect that the evidence will further show that the fraud perpetrated upon Mrs. McCarthy was this: That she was deprived of a right to seek employment elsewhere when she was under the belief and impression that at that time she would be paid for the services then being rendered to the Lowenstein Snappy Garment Company, of which the defendant Lowenstein was the president.”
 

 The court then questioned the prosecutor as follows :
 

 “The Court: Do I understand that you expect the evidence for the state to show that at the time this check was given, that Mrs. McCarthy refused
 
 *397
 
 to continue to work unless the check was given, and it was given to induce her to continue work?
 

 “No; she did not refuse to work, but she relied on the fact that she would be paid on the regular pay day for services to be rendered thereafter.
 

 “The Court: But nothing was said, at the time of the giving of the check, on that subject?
 

 “Nothing was said until after she took it to the bank and found it was not honored by the bank. Then she came back to see Mr. Lowenstein.
 

 “The Court: Do you expect to prove he told her it would be made good, and then she continued to work?
 

 “Mr. Strasser: That is exactly the situation.
 

 “The Court: Well, I am still of the opinion that the statute has not been violated.”
 

 It is evident, therefore, that the learned judge was of the opinion that in no case where a check is given for a past consideration can intent to defraud exist, and that the
 
 prima facie
 
 evidence of intent to defraud, which, under the statute, exists when payment of the check is refused by the drawee, is rebutted when it is shown that the check is given for a past consideration.
 

 Defendant in error relies mainly for his contention upon a judgment in the Court of Appeals of Kentucky
 
 (Commonwealth
 
 v.
 
 Hammock,
 
 198 Ky., 785, 250 S. W., 85), which state has recently enacted a “cold-check” law similar to the law of Ohio. In that case an indictment was framed accusing one Henry Hammock of “unlawfully and fraudulently delivering a cheek for the payment of money upon a bank, knowing at the time of such delivery that the maker had not, sufficient
 
 *398
 
 funds in such bank for the payment of sucb check in full upon its presentation.” Demurrer was filed to this indictment.
 

 The indictment charged that the defendant received for the check currency in the amount of $76.07, which had been advanced to Hammock some 20 or 30 days prior to the giving of the check. The court held that as Hammock obtained the money 20 or 30 days before the check was given, he did not obtain the money or any part thereof by reason of the check, or its issue, or delivery, and that he issued and delivered the check, not with the intent to obtain such money, but only in payment of a past-due obligation. Because of this fact the court held that the defendant could not have issued the check with intent to defraud, and that the trial court properly sustained the demurrer to the indictment.
 

 The Kentucky Statute (Section 1213A) differs somewhat from that of Ohio, in containing the following provision:
 

 “
 
 Provided, however, that if the person who makes, issues, utters or delivers any such check, draft or order, shall pay the same within twenty days from the time he receives actual notice, verbal or written, of the dishonor of such cheek, draft or order, he shall not be prosecuted under this section, and any prosecution that may have been instituted within the time above mentioned, shall, if payment of said check be made as aforesaid, be dismissed at the cost of defendant.”
 

 The court relies upon this provision as a ground of its decision, holding that in the light of this provision, under the Kentucky statute, intent to defraud exists only where a check or draft is
 
 *399
 
 issued to obtain money or property at the very time of issuing the eheck or draft.
 

 There is no such provision in the Ohio statute, and therefore the reason of the Kentucky holding, if logical, does not strictly apply. Under the above section of the Kentucky statute proof of nonpayment of the check by the maker within 20 days of notice of its dishonor appears to be necessary to complete even a
 
 prima facie
 
 case against the maker. Such is not the case in Ohio. Apart from this distinction, however, we cannot agree that the above provision has the effect stated by the court, and are forced to examine the question from the standpoint of sound logic, and not from the authority of this Kentucky case.
 

 If rebutted, the presumption must be rebutted by something in the nature of the act of giving a “cold check” for a past consideration, which establishes enough of good faith to counteract the presumption of fraudulent intent specifically raised by the statute.
 

 What is this element? It cannot be the fact that no money was obtained from giving the check, for it is well established that in an offense of this kind the element of money damage is not essential.
 

 Under the statute, as drawn, money damage is not necessary to complete the crime. All that is necessary is the issuing of the check upon a bank or depositary by one who at the time has insufficient funds or credit; the issue being made with intent to defraud. It is admitted that all of the other essential elements described in the statute were present in this case, including’ the nonpay
 
 *400
 
 ment of the cheek by the bank, which the statute makes
 
 prima facie
 
 evidence of intent to defraud, and the sole question is whether sufficient evidence of intent to defraud was shown to take the case to the jury.
 

 What is “intent to defraud”? It is intent to commit a fraud.
 

 What is fraud? As defined by Webster, “Fraud” is a “deception deliberately practiced with a view to gaining an unlawful or unfair advantage.” Financial damage is not necessary to the existence of fraud. In the case of
 
 United States
 
 v.
 
 Plyler,
 
 222 U. S., 15, 32 Sup. Ct., 6, 56 L. Ed., 70, a forgery case which involved a discussion of the elements of fraud, the Supreme Court of the United States says:
 

 “It now must be regarded as established that ‘it is not essential to charge or prove an actual financial or property loss to make a case under the ' statute.’ ”
 

 Again, in
 
 People
 
 v.
 
 Meyer,
 
 289 Ill., 184, 124 N. E., 447, which was originally a case of forgery, and involved the intent to defraud, the court in syllabus 1 holds:
 

 “The crime of forgery is complete with the making of a false instrument with the intent to defraud, and it is immaterial whether any one is, in fact, defrauded if the intent to defraud is shown.”
 

 In spite of the fact that financial damage need not be shown to make out a
 
 prima facie
 
 case under the statute, the learned trial judge seemed to think that the giving of a “cold check” for a past consideration is
 
 per se
 
 so innocent as. to rebut the presumption of fraudulent intent established under the statute by the refusal of the check. Is
 
 *401
 
 this the case? If given without knowledge that there were not funds in the bank to meet the check, or that the funds were insufficient to meet the cheek, the issue is innocent. If given with knowledge that payment would be refused, the presumption of intent to defraud established under the statute by the mere refusal of payment would seem to be strengthened instead of being rebutted. That is, in the issue of a check for a past as well as for a present consideration, the question whether or not the intent to defraud exists is a question of fact, and hence for the jury.
 

 When in payment of a past consideration a man gives a cheek, if he gives the check knowing that he has not funds on deposit to cover it, why does he so act? He so acts because he expects to gain an advantage. He expects perhaps to deceive persons who are pressing for payment; he expects them to think that he has paid the old debt when he has not paid.
 

 Defendant contends, however, that the giving of a check for a past consideration, so far from defrauding the person who receives it, may give the payee an advantage, because, if the check is given for a debt arising out of a simple contract, the creditor can then rely upon a written rather than upon an oral contract in enforcing his claim. To push this contention to its ultimate conclusion, we should have to hold that where a man issues a false check in payment of a debt past due, knowing that he has no money in the bank, or insufficient credit, and immediately absconds from the jurisdiction in order to avoid service, he has committed no fraud because the check was issued in
 
 *402
 
 payment of a past-due obligation. This proposition states its own absurdity.
 

 The crime of uttering a check to defraud is no! the crime of false pretense; it is a new and distinct crime. It was created by the statute to meet a situation different from that covered by the law against obtaining under false- pretenses.
 

 It was the evident purpose of this statute to prevent the negotiation of false checks drawn on accounts which did not exist, or were insufficient to pay the checks drawn. It was meant, for example, to protect hotel keepers from receiving “cold checks” in payment of obligations incurred for lodging, many of which are past due. It was enacted to protect business men all over the state, to protect commercial life; about 90 per cent, of the commercial work of the world being done on credit. In order to protect the credit intercourse of the community this statute was enacted creating a new crime and providing new and distinct rules of evidence.
 

 The statute is silent as to the issue of checks for a past due obligation. It does not state that the issue of a check under such circumstances establishes or negatives intent to defraud. It provides, however, that the return of the check is
 
 prima facie
 
 proof of “intent to defraud, and knowledge of insufficient funds in, or credit with, such bank or other depositary.” That is, the statute places the knowledge of the insufficiency of funds on the same plane as intent to defraud, and thus makes proof of such knowledge evidence of intent to defraud.
 

 The fact of knowledge cannot be determined
 
 *403
 
 until evidence is taken upon that point. Certainly it cannot be determined on a statement such as was given by the prosecutor in this case. Intent to defraud and knowledge of the insufficiency or non-existence of the funds are questions of fact to be determined on all the evidence by the jury. Hence it was error for the court to decide that question.
 

 It is not the holding of this court that the issue of such a check for a past-due obligation is conclusive evidence of intent to defraud. It is
 
 prima facie
 
 evidence only, and may be rebutted in the course of the trial. The court, however, does hold that a
 
 prima facie
 
 case of intent to defraud was established upon the facts here set forth and that the learned judge erred in sustaining the motion to take the case from the jury.
 

 Exceptions sustamed.
 

 Marshall, C. J., Wanamaker, Robinson, Matthias, Jones and Day, JJ., concur.