32 N.J. Super. 89 (1954)
107 A.2d 807
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PETER J. RICCARDO, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK P. MAZZA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 16, 1954.
Decided September 17, 1954.
*90 Mr. Heyman Zimel argued the cause for the appellants.
Mr. Guy W. Calissi, County Prosecutor (Mr. Ralph L. Fusco, Deputy Attorney-General on the brief), argued the cause for the respondent.
Before Judges SPEAKMAN, HEGARTY and CONLON.
The opinion of the court was delivered by CONLON, J.C.C. (temporarily assigned).
The two appellants were found guilty in the Bergen County Criminal Judicial District Court on two separate but identical complaints which charged respectively that Peter J. Riccardo, *91 president of the Normandie Finishing Co., Inc., and Frank P. Mazza, secretary-treasurer thereof, did with intent to defraud, make, utter and deliver to Smith-Robinson, Inc., a check for the amount of $265 drawn on the Rutherford Trust Company, knowing at the time of the making thereof that there were insufficient funds in said bank to meet said check upon its presentation for payment, in violation of N.J.S. 2A:111-15.
The complaints were tried together before the court without a jury, and, after conviction, the appeals were consolidated. There is no transcript of the proceedings and the matter is before this court on a statement of evidence and proceedings in accordance with R.R. 1:6-3 (R.R. 2:6). The case was tried and defended on the theory that the only defense to the complaints was the contention of the defendants that while the check was dated December 4, 1953, it had in fact been delivered to the payee some two days prior and was, consequently, a postdated check for the giving of which the defendants could not be convicted under the statute in question. State v. Barone, 98 N.J.L. 9 (Sup. Ct. 1922).
The sole grounds of appeal were: (1) that the trial court's finding as a fact that the check was not postdated was contrary to the weight of the evidence, and (2) that the court rejected some collateral testimony which the defendants claimed had a favorable bearing on their contention that the check was postdated. Excepting to indicate that in the absence of a transcript of the testimony there is not sufficient ground for this court to reverse the factual finding of the trial court or to pass upon the relevancy of the collateral testimony, it is unnecessary to discuss these matters since during the argument of the appeal a circumstance was disclosed which rendered a conviction in this case contrary to law.
A reading of the record on appeal and an examination of the exhibits made it apparent that the check in question was signed and delivered by the defendants as officers of Normandie Finishing Co., Inc., in payment of an account of that company already due to the Smith-Robinson Co., the *92 payee of the check, and that no consideration passed from the payee to the defendants by virtue of the check. When that circumstance was called to the attention of the prosecutor during the oral argument, and because there had been no factual finding in that respect by the trial court, with a commendable desire to further the cause of justice he reviewed his file and, after confirming the fact, stipulated before this court that the check signed by the defendants and dated December 4, 1953 was in fact given in payment of a shipment of goods made by the payee on July 6, 1953. This court was thereupon confronted with the question of the validity of a conviction based solely upon the fact that the check in question was dishonored by the bank without any consideration having moved from the payee to the defendants. Although the question was not raised in the court below nor in the original briefs filed herein, this court feels constrained to consider it in view if the provisions of R.R. 1:5-1 (R.R. 2:5) which provide that this court may notice plain errors affecting the substantial rights of the defendant although they were not brought to the attention of the trial court. We conceive that the situation presented here requires the application of the rule.
The statute under which these convictions were had (N.J.S. 2A:111-15) provides in essence as follows:
"Any person who * * * as an officer or agent of any corporation, * * * with intent to defraud, makes, draws, utters or delivers a check, draft or order for the payment of money, upon any bank or other depository, knowing at the time of so doing that the maker, or drawer, has no funds or insufficient funds in, or credit with, such bank or other depository for the payment of such instrument, in full, upon its presentation, although no express representation is made in reference thereto, is guilty of a misdemeanor * * *."
Section 16 provides as follows:
"The making, drawing, uttering or delivering of a check, draft or order as stated in section 2A:111-15 of this title shall be prima facie evidence of intent to defraud, and the certificate of protest of nonpayment of same shall be presumptive evidence that there were *93 no funds or insufficient funds in or credit with such bank or other depository and that the person making, drawing, uttering or delivering the instrument knew that there were no funds or insufficient funds in or credit with such bank or other depository."
It will be noted that the statute provides that there must be an intent to defraud, and that it further provides that the delivery of a check with insufficient funds to meet it shall be "prima facie evidence of intent to defraud," but those provisions do not mean that every giving of such a check is a violation of the statute. In each case, in spite of the statutory presumption, the burden is upon the State to prove beyond a reasonable doubt that the defendant entertained a criminal intent to defraud. This principle was clearly enunciated by Judge Jacobs speaking for this court in State v. Kapelsohn, 9 N.J. Super. 177 (App. Div. 1950). In that case the defense was that the act of overdrawing the account was an innocent error. The trial court correctly charged the statute but, in spite of objection declined to explain the limitations surrounding the phrase "prima facie evidence of intent to defraud." In reversing the conviction the court said:
"Although the statutory presumption was referred to twice in the charge, nothing whatever was said as to its meaning; nor was the jury directly instructed that no conviction could be returned unless it was satisfied beyond reasonable doubt that the defendants issued the check with intent to defraud, knowing that there were insufficient funds in their account. * * * We incline to the view that when this case was submitted to the jury the statutory presumption, apart from its underlying inference as a matter of reasoning * * * was no longer of weight and need not to have been brought to the jury's attention. * * * Assuming, however, that the court was at liberty to refer to it in its charge, it seems to us that, having done so, it was fairly incumbent upon it to delimit its effect and clearly set forth the controverted issue for the jury's determination upon the evidence in the cause."
This limitation of the effect of the presumption created by the statute is further emphasized by the line of cases, State v. Barone, supra, which hold in effect that where a check is postdated any intent to defraud is negatived and a *94 conviction will not lie. Oddly enough, the precise question here presented does not seem to have been considered by our appellate courts, but there is a wealth of authority in other jurisdictions which have statutes similar to that in New Jersey, holding in effect that while the mere fact that a check is given for a past consideration does not ipso facto negative the element of fraud, it is a controlling circumstance when no other element of fraud exists. People v. Humphries, 226 App. Div. 500, 234 N.Y.S. 688 (App. Div. 1929); People v. Nibur, 238 App. Div. 233, 264 N.Y.S. 148 (App. Div. 1933); State v. Lowenstein, 709 Ohio St. 393, 142 N.E. 897, 35 A.L.R. 361 (Ohio Sup. Ct. 1924); Berry v. State, 153 Ga. 169, 111 S.E. 669, 35 A.L.R. 370 (Sup. Ct. 1922); State v. Vandenburg, 9 W.W. Harr. 498, 2 A.2d 916 (Del. Ct. Gen. Sess. 1938). These and other cases are cited in 35 A.L.R. 361. One of the typical instances in which the giving of a check for a past consideration might be tainted with an intent to defraud is where the maker of the check obtains an extension of credit or relief from threatened legal action. No such situation exists in the case before us.
In some jurisdictions the statutes relating to the drawing of checks without sufficient funds to honor them do not include as an element of the statutory offense the intent to defraud. Kansas has such a statute and in commenting on it the Kansas Supreme Court said:
"The purpose of the statute was to discourage overdrafts and resulting bad banking (Saylors v. State Bank of Allen, 99 Kan. 515, 518, 163 P. 454) to stop the practice of `check kiting,' and generally to avert the mischief to trade, commerce, and banking which the circulation of worthless checks inflicts." State v. Avery, 111 Kan. 588, 207 P. 838, 23 A.L.R. 453, at page 456 (Sup. Ct. 1922).
The decisions under such statutes have no applicability to cases arising under the New Jersey statute.
In the instant case it is established that the check in question was signed and delivered in December 1953 in payment of goods that had been purchased from the payee in July 1953, and there is no indication that any consideration *95 passed from the payee to the makers as a result of the delivery of the check. It follows as of course that if that was so, there could have been no intent to defraud on the part of the defendants. Such criminal intent being an integral part of the statutory crime, the elements of the offense charged were not proved.
The judgments of conviction are reversed.