78 N.J. Super. 203 (1963)
188 A.2d 198
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JACK TURETSKY AND LILLIAN TURETSKY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1963.
Decided February 4, 1963.
*206 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Ernest Prupis argued the cause for appellants (Messrs. Weltchek and Weltchek, attorneys; Mr. Prupis on the brief).
Mr. George Perselay, Assistant Prosecutor, argued the cause for respondent (Mr. H. Douglas Stine, Union County Prosecutor, attorney; Mr. Perselay, of counsel).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendants were found guilty by a jury in the Union County Court of having issued a worthless *207 check on November 18, 1960, payable to the order of County Plumbing, Inc. in the amount of $1,000, in violation of N.J.S. 2A:111-15. They were duly sentenced and now appeal from the judgment of conviction.
Defendants contend in their argument for reversal that the State failed to establish a violation of N.J.S. 2A:111-15; that the trial court erred in (1) not ruling as a matter of law that there was no intent to defraud on the part of the defendant Lillian Turetsky; (2) refusing to charge the defendants' requests; and (3) in its evidentiary rulings; and that the verdict was against the weight of the evidence and a product of prejudice, passion, bias or mistake.
N.J.S. 2A:111-15 provides as follows:
"Any person who, for himself or as agent or representative of another person, or as an officer or agent of any corporation, or as a member of a partnership, with intent to defraud, makes, draws, utters or delivers a check, draft or order for the payment of money, upon any bank or other depository, knowing at the time of so doing that the maker, or drawer, has no funds or insufficient funds in, or credit with, such bank or other depository for the payment of such instrument, in full, upon its presentation, although no express representation is made in reference thereto, is guilty of a misdemeanor and shall be punished by a fine of not more than $1,000, or by imprisonment for not more than 1 year, or both."
Under that provision, in order to justify the conviction of a defendant, it is necessary for the State to prove beyond a reasonable doubt three essential elements, to wit: (1) the making, issuance or delivery of a check; (2) with knowledge that the maker has insufficient funds for its payment in full upon its presentation, and (3) with intent to defraud.
Under their first point defendants concede the making and delivery of the check to an officer of the payee, but they contend that the State presented no evidence showing that they knew there would not be sufficient funds to honor the check, and that the State's evidence itself established that no fraud was committed upon the payee.
N.J.S. 2A:111-16 provides that the making, drawing, uttering or delivery of a check as stated in N.J.S. 2A:111-15 *208 "shall be prima facie evidence of intent to defraud." The other provision in N.J.S. 2A:111-16, to the effect that the certificate of protest of nonpayment shall be presumptive evidence that there were insufficient funds in the bank and that the person making, drawing, uttering or delivering the instrument knew that there were insufficient funds in the bank, is not applicable to this case, because the check in issue did not have any certificate of protest annexed to it pursuant to a request by the payee's bank upon the drawee bank that the check be not protested.
To evaluate the several contentions made by the defendants, we now summarize the evidence as presented by the State and as presented by the defendants.
On July 7, 1959 Nappo Construction, Inc. (hereinafter "Nappo") opened a checking account in the Irvington office of the National State Bank. The corporate resolution authorizing the opening of the account provided that checks could be signed by any two of its three officers. The officers were listed as Jack Turetsky, president, Lillian Turetsky, vice-president, and Leo Turetsky, secretary. At no time after November 14, 1960 was there a balance in this corporate account in excess of $742.22.
Edward Saladino, an officer of County Plumbing and Heating Company, Inc. (hereinafter "County"), which had done work for Nappo Construction, Inc. in connection with several houses Nappo had built and was building in Mountainside, N.J., testified that on November 18, 1960, in the morning, he told the defendant Jack Turetsky that County needed money to buy materials to complete the work in some of the unfinished houses. At that time, according to Saladino, Nappo was indebted to County for work already done to the extent of "roughly $5,000 or $6,000." This conversation took place in front of one of the buildings in Mountainside, about five or six feet from an automobile in which Lillian Turetsky was then seated. She did not participate in the conversation. Saladino stated that Jack Turetsky then and there gave him the $1,000 check in issue, signed by Jack and *209 his mother Lillian, so that County could purchase materials to complete the job.
Saladino had misgivings as to whether this check was any good, because he had previously received two worthless checks from Nappo. So, he forthwith, on the same day, took the check to Nappo's bank in Irvington and presented it for payment. However, payment was refused on such presentation. Saladino says that he was then and there told by a bank official that there were not sufficient funds to honor the check. In his words,
"The man laughed at me and said: `You are about 100 on the list. If you can find Mr. Turetsky tell him we are looking for him.'"
Saladino then brought the check back and gave it to his own bank, The Rahway National Bank, for collection, with instructions "to hold until it was good." The Rahway bank sent the check to the drawee bank for collection, with directions to hold it for 14 days if necessary and not to protest it. Collection was never made because there never was sufficient money thereafter in Nappo's account to honor it. The drawee bank returned the check to the Rahway bank on December 6, 1960 with the notation "Insufficient funds."
Despite his knowledge on Friday, November 18, 1960, that Nappo did not have sufficient funds in its bank account to honor the $1,000 check and that he was "about 100 on the list," Saladino testified that he ordered the materials necessary for the job on the following Monday morning, before he saw Jack Turetsky at the job site and before he had informed any officer of Nappo that the drawee bank refused to honor the check with payment. Obviously, Saladino or County was not actually defrauded by the issuance of the bad check because no reliance was placed on it in ordering the materials. It was only after the materials were ordered, according to Saladino, that he went to the job site, saw Jack Turetsky there, informed Jack as to what had happened, and was told by Jack:
"The bank is crazy, of course it is good."
*210 But County's lack of faith in any such remark is evidenced by its conduct upon receiving the check, the information it received at the bank, and its action in turning the check over to its own bank for collection with instructions to hold it until it is good.
Nor did County proceed with its work for Nappo on the strength of the bad check of November 18, 1960. As Saladino testified:
"Well, we worked there about a week after the 18th on the promise he would give us another check which he swore would be good and on that promise we continued to work."
However, N.J.S. 2A:111-15 does not require proof of fraud, but only of an "intent to defraud" at the time the check was given. It was for the jury to determine whether the defendants entertained such intent at that time on the State's proofs.
The evidence presented on behalf of the defendants showed the following:
Jack Turetsky, president of Nappo, handled all of its financial affairs. He was a New York C.P.A. His brother Leo, secretary of the corporation, handled the construction work and had little or nothing to do with the corporation's financial affairs, except that on occasions he signed the corporate checks. Leo lived in Bayonne with the mother, Lillian. Jack lived elsewhere. Nappo, a corporation engaged in building houses, was originally founded by Jack's father and Lillian's husband. When he died in 1959 the two sons and the widow carried on the business. The Bayonne apartment in which the defendant Lillian and her son Leo lived was the nominal business office of the corporation. Bank statements and other papers would be addressed to the corporation there. Lillian testified that whenever these documents arrived at the apartment she would not examine them, but she and Leo would take them the next morning when they went to the job and would give them to Jack.
The defendant Lillian Turetsky became greatly depressed after the death of her husband and, upon the advice of her *211 doctor, she would go to the job site with her sons practically every day. The purpose was to get her to take her mind off herself by becoming interested in the business, although her function was nominal at best. Jack would give her some perfunctory job, such as checking delivery tickets, and she signed checks whenever Jack requested her to sign them. Jack testified that he never explained to his mother the purpose of the checks and she never questioned him. Apparently, she furnished the second signature whenever it was requested as a matter of unquestioning routine.
The position of the defendants at the trial was that Fedile Tavormina, an officer of County, and not Saladino, came to them about the first week of November 1960, and while all three were seated in the car, Tavormina and Jack up front and Lillian in the rear, Tavormina said to Jack that County had to have a check. Jack testified that he told him that Nappo wouldn't have a closing for possibly two weeks and asked him if they wouldn't wait. Jack then testified:
"He said that he wanted it and if I would date it ahead, he would hold onto it and wouldn't do anything with it. He just wanted to have it so he wouldn't have to come back. He wasn't working there at the time. I gave him the check with the understanding that he would hold it for a week and at that time or even beyond a week's time until I would tell him to go ahead and put it in for collection, and that was done because of a primary basis  we were given checks at the closing that sometimes were out of the State that required ten to fifteen days to clear. In other words, we were given a check and sometimes we would have to wait for the clearance of two weeks' time, so we would post-date the check and ask them to hold onto it."
Thus, the defense was that the check was a postdated check given solely as payment on account of a past-due indebtedness and to be held by County until there was money in the bank to honor it. Jack denied that the check was given to enable the purchase of materials and claimed that Nappo had bought the material that County was to install in the houses and that this was the sole equipment on the job.
*212 Tavormina, testifying as a rebuttal witness for the State, denied that the check in issue had been given to him and stated that the check had been handed to Saladino "to buy material for two homes on finishing, to finish the heating that were in the process of being completed." On cross-examination, he admitted that he was not present when the check was given, but that Saladino called him that night and told him that he had gotten a check. In response to a question by the court, Tavormina testified that his knowledge that the purpose of the check was to purchase material was on the basis of what Saladino had told him. On defendants' motion, the court struck the answer insofar as the conversation between Tavormina and Saladino was concerned. Defendants' further motion to strike Tavormina's statement on direct examination as to the purpose of the check was denied. This witness conceded that he did not have any business dealings directly or indirectly with defendant Lillian Turetsky and asserted that he never received a check in the presence of Lillian Turetsky.
It can be seen from the foregoing that the case presented issues of fact to be resolved by the jury, at least as to the defendant Jack Turetsky. If the jury believed that the check was given by the defendants to Saladino on the date of its issuance with the fraudulent intent of inducing County to order materials and to proceed with the job, well knowing that Nappo did not have sufficient funds in the bank with which to honor the check on presentment, then the defendants could properly be found guilty of the crime charged against them. On the other hand, if the jury believed the testimony of Jack Turetsky, which his mother corroborated, that the check in issue was a postdated check, then the defendants would not be guilty of violating N.J.S. 2A:111-15. The giving of a postdated check is not a criminal offense, since it is nothing more or less than a promise to pay in the future. State v. Barone, 98 N.J.L. 9, 12 (Sup. Ct. 1922). So, too, if the jury believed that this $1,000 check was delivered, either postdated or on the date appearing on its face, solely *213 as payment on account of a larger past due obligation and no other consideration passed from the payee to the makers as a result of the delivery of the check, then the element of intent to defraud, essential to the proof of the statutory offense, would have been lacking and the defendants would have been entitled to an acquittal. State v. Riccardo, 32 N.J. Super. 89, 94-95 (App. Div. 1954). As we said in Riccardo:
"* * * while the mere fact that a check is given for a past consideration does not ipso facto negative the element of fraud, it is a controlling circumstance when no other element of fraud exists."
A check given for a past consideration might still be tainted with an intent to defraud, as where the maker of the check obtains an extension of credit or relief from threatened legal action. State v. Riccardo, supra, at p. 94.
Defendants made a timely request in writing that the trial court instruct the jury in the language of the Riccardo case quoted above. In denying this request, the trial court said that it could not "recall any testimony by these defendants that this check was given for any past consideration." It noted that there was evidence "to the effect that there was three or four thousand dollars due * * *. But there is no indication in the evidence that this Court can recall that this check was given on account thereof." The trial judge also expressed his feeling that the law set forth in the requested language, taken verbatim from the Riccardo case, "has been changed by the case which the Court cited on the motions contained in 45 New Jersey Super., which is the latter case on this point." The attorney for defendant Jack Turetsky thereupon stated that there was "testimony that this check was given in part payment of the bill which was then presently owing," but the trial ruling denying this request was not changed.
Our reading of the record satisfies us that there was testimony by the defendant Jack Turetsky that the giving of this check was for work done in the past. Furthermore, he denied that Saladino had requested the check in order to buy materials *214 and insisted that County was working on the job with material bought by Nappo. There was evidence that Nappo owed County $4,000 or $5,000 for work already completed and that Tavormina had requested a check without any reference to its use to buy materials. Therefore, the denial of the request on the ground that there was no testimony that the check was given for past consideration lacks support in the record.
The reference by the trial court to the later case "in 45 New Jersey Super." was probably intended as an allusion to State v. Goerdes, 48 N.J. Super. 293 (Law Div. 1957). The trial court in that case concluded that State v. Riccardo, supra, "did not set down any rule of law that the giving of a check for a past consideration prevents a conviction." That is true, so far as it goes. But the defendants here were entitled to have the trial court charge the jury, as they requested, what we did say in Riccardo and what was pertinent to the issue in this case. The trial court refused to do so because of its faulty recollection of the evidence and because of its erroneous impression that State v. Goerdes had changed the law laid down in State v. Riccardo. Obviously, a later decision by a trial court cannot by mere force of chronological circumstance change a rule of law laid down in an earlier opinion by an appellate tribunal. We expressly refrain herein from passing upon the correctness of the decision of the trial court in State v. Goerdes, supra, because that ruling was based upon its own peculiar facts. Suffice it to say that we reaffirm the correctness of the proposition of law laid down in State v. Riccardo, which the defendants requested the trial court to charge the jury, and conclude that the refusal to do so constituted prejudicial error, requiring a retrial of the indictment.
Motions to acquit were presented by both defendants at the end of the State's case, and such a motion was repeated on behalf of the defendant Lillian Turetsky at the end of the entire case. It is also contended that the verdict against the defendants was against the weight of the evidence, and defendants complain of the denial of motions for a new trial on *215 that ground as well as for other alleged trial errors mentioned above.
As to the defendant Jack Turetsky, we are satisfied that all such motions were properly denied. The discussion of the facts and proofs hereinabove will indicate the basis for our view that the jury could have found each element of the statutory requirements for guilt established by the State if it chose to credit the testimony of the State witnesses.
As to the defendant Lillian Turetsky, however, we incline to the view that at the conclusion of the State's case insufficient evidence was presented as to the elements of knowledge of insufficiency of funds and of intent to defraud. Cf. State v. Samurine, 47 N.J. Super. 172 (App. Div. 1957), reversed 27 N.J. 322 (1958). This called for an acquittal without regard to the condition of the proofs at the end of the entire case. State v. Fiorello, 36 N.J. 80 (1961). Nevertheless, pursuant to the practice restated in State v. Sullivan, 77 N.J. Super. 81, 86 (App. Div. 1962), we will not direct an acquittal but remand for a new trial as to both defendants.
Defendants complain of the refusal of the trial court to charge that portion of the request to charge by defendant Jack Turetsky reading as follows:
"Prima facie evidence of intent to defraud by the mere drawing of a check which is dishonored for insufficient funds can be rebutted by competent evidence presented by the defendants."
The reference herein is to the so-called presumption of intent to defraud contained in N.J.S. 2A:111-16 mentioned hereinabove. It is our view that the essence of the said request was in fact charged by the trial court but that it was inappropriate for the court to have made any reference at all in its charge to the jury to the statutory provision. The language of the charge in this respect was as follows:
"You will observe, from my reading of the statute, that the making, drawing, uttering, or delivering of a check, draft, or order, as set forth in Section 2A:111-15, under the provisions of the latter section which I read, being 2A:111-16, is prima facie evidence of *216 intent to defraud. What does this mean? Well, a prima facie case means such as will suffice until contradicted and overcome by other evidence in the case. The statute creates what we call in the law a rebuttable presumption. It is a presumption of an intent to defraud and that presumption continues until, after the evidence which you consider, compare and evalute, you are satisfied it has been rebutted by the evidence in the case."
Although the trial court followed this instruction with a direction that no conviction could be returned against either defendant unless the jury was satisfied from the evidence that the State had proved beyond a reasonable doubt every element of the crime, including intent to defraud, the effect of the instruction as to the prima facie effect of the proofs, as quoted above, was to tend to convey to the jury that, notwithstanding the probative tendency of some of the specific proofs bearing upon the element of intent to defraud to negate that fact, the defendant had the burden of satisfying the jury thereon  i.e., of overcoming or rebutting what the trial court called a statutory presumption as to such intent to defraud. This was of harmful propensity to defendants. First of all, 2A:111-16 creates no "presumption" but merely makes the "making, drawing, uttering or delivering of a check, draft or order as stated in section 2A:111-15 * * * prima facie evidence of intent to defraud * * *." (Compare the language in 2A:111-16 which makes a certificate of protest "presumptive evidence" of other facts.) Secondly, it is clearly the law that notwithstanding language such as is contained in 2A:111-16 (whether in terms of "prima facie evidence" or "presumptive evidence") the State always has the burden to prove the elements of the charge, including the intent to defraud, beyond a reasonable doubt. State v. Riccardo, supra (32 N.J. Super., at p. 93). If the proofs as a whole left a reasonable doubt as to the intent to defraud, the defendants were entitled to acquittal. The defendants were not under any burden of proof to satisfy the jury that there was no intent to defraud.
The proper effect of the provision of N.J.S. 2A:111-16 cited above is, in the event the State shows issuance *217 of the check without funds in bank and knowledge thereof by defendants, and no other facts appear conclusively negating intent to defraud, as in State v. Riccardo, supra, to preclude the granting of a motion for acquittal for lack of specific evidence of intent to defraud. But under the statute the defendants' only burden, once the prosecution has established a prima facie case, is to come forward with some substantial evidence tending to negate an intent to defraud, unless such evidence appears on the State's case, at peril of risking a finding of guilt by the jury on all of the elements of the crime, including intent to defraud. If the defendant fails to do so, the judge may tell the jury that it has the right, from the making, drawing, uttering or delivering of a check, draft or order as stated in section 2A:111-15, to infer that it was done with intent to defraud. But even in such case he should in the same context inform the jury that to convict it must be convinced of the defendant's guilt of all elements of the crime, including intent to defraud, beyond a reasonable doubt. Since here defendant had come forward with proof tending to negate intent to defraud, there was no need to inform the jury of the language of 2A:111-16, and doing so created a danger of confusion or prejudice. Ordinarily the judge should refrain from doing so. The regulation of the burden of the evidence, whether of persuasion or of going forward, is for administration by the judge alone. See State v. Chiarello, 69 N.J. Super. 479, 503 (App. Div. 1961), certification denied 36 N.J. 301 (1962). Here, the only burden which required explanation in the charge was the burden of persuasion of the jury, i.e., that the State had to satisfy the jury as to guilt of each element of the crime beyond a reasonable doubt. See State v. Kapelsohn, 9 N.J. Super. 177, 181 (App. Div. 1950); State v. Chiarello, supra, and the authorities cited in both of these opinions. The court will be guided accordingly at the retrial.
We find it unnecessary to discuss at length the other contentions made by the defendants for a reversal and deem it *218 sufficient to say that we have examined each of them and find them to be without substantial merit.
The judgment of conviction is reversed and the matter is remanded for a new trial.