STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
MILTON POLLACK, ALSO KNOWN AS MANNY POLLACK,
DEFENDANT-APPELLANT.

Argued March 2, 1964—Decided July 7, 1964.

*Mr. Douglas T. Hague* argued the cause for defendant-appellant (*Messrs. Wilentz, Goldman & Spitzer,* attorneys; *Mr. Warren W. Wilentz,* of counsel).

*Mr. Gregory J. Castano* argued the cause for plaintiff-respondent (*Mr. James A. Tumulty, Jr.,* Prosecutor, *Mr. William A. O'Brien,* Assistant Prosecutor, attorneys for plaintiff-respondent).

The opinion of the court was delivered by

HANEMAN, J.   At the consolidated trial of six indictments, each charging the defendant Milton Pollack with uttering a worthless check in violation of the provisions of *N. J. S.* 2A:111–15, Pollack was convicted on each indictment.   He was fined $500 and sentenced to one year in State Prison for each conviction, the sentences to run consecutively. The Appellate Division affirmed in an unreported opinion and we granted defendant's petition for certification.   41 *N. J.* 127 (1963).

In the Appellate Division and on this review only one issue is presented for decision, *viz.,* whether it was reversible error for the trial court to have excluded certain evidence regarding prior transactions between the complaining witness and the defendant.

The basic facts are uncomplicated.   Mrs. Betty Perrotta and her mother, Mrs. Theresa Lamberti, the complaining witnesses, testified that on January 3, 1961, the defendant delivered six checks to them in settlement of promissory note obligations, the notes being returned to him at that time.   Each check was drawn on the Amalgamated Bank of New York in the amount of $4,500, dated January 3, 1961, and signed by defendant.   Three checks were payable to Mrs. Perrotta and three to Mrs. Lamberti.   On the following day Mrs. Perrotta deposited the checks in various banks for collection but they were subsequently returned for lack of sufficient funds.   Mrs. Perrotta's husband and brother corroborated the testimony that delivery of the checks was made on January 3, 1961.

The defendant had told Mrs. Perrotta and her mother that he was engaged in importing sweaters.   Mrs. Perrotta and Mrs. Lamberti then "loaned" him $9,500 and $9,000

respectively and received in return promissory notes and promises of handsome "profits" for the use of the money. The total face amount of the checks referred to in the indictment was $27,000. Mrs. Perrotta testified that the checks were in part payment of defendant's above obligations, the total amount to be repaid being approximately $40,000.

Defendant testified that the checks were postdated, that he had delivered them on the 28th of December 1960, and that Mrs. Perrotta agreed to deposit one check a week, as she had done on previous occasions.

In the cross-examination of Mrs. Perrotta and Mrs. Lamberti defense counsel made numerous attempts to elicit testimony regarding prior transactions between the parties. The prosecutor's objections to any questions not specifically directed to the transactions involving the six checks in question were consistently sustained by the trial court. In the Appellate Division defendant argued that the above exclusionary rulings constituted prejudicial error, contending that such evidence would have disclosed a "habit or custom" of issuing postdated checks in payment of loans from which a strong inference would arise that such practice was observed in the situation covered by the indictments, thereby negating the necessary intent to defraud. The Appellate Division was of the opinion that the controverted questions advanced at trial concerned matters apparently remote and of doubtful relevance, and that the trial court had not abused its discretion in excluding them.

The main problem raised is the proper scope of cross-examination. Under the theory that postdated checks are not within the reach of *N. J. S.* 2A:111–15, *State v. Barone,* 98 *N. J. L.* 9, 12 (*Sup. Ct.* 1922), cf. *State v. Turetsky,* 78 *N. J. Super.* 203, 212 (*App. Div.* 1963), the key factual issue was the date of delivery of the checks. Mrs. Perrotta, the primary complaining witness, testified that defendant had delivered the checks to her on the same day they were dated, and that there was no arrangement as to a sequence in which they were to be deposited. She admitted, however,

that she had advanced money to defendant as far back as 1959 which he had partially repaid.

Mrs. Lamberti, who testified through an interpreter, also placed the date of delivery as January 3, 1961, and said that she instructed her daughter to deposit the checks for her. She admitted on cross-examination that defendant had returned other money advanced by her prior to the checks in question, and said that the difference between the $9,000 given to defendant and the $13,500 face amount of these checks represented the "balance from other sums of money."

■ When defense counsel attempted to pursue a line of inquiry dealing with the prior transactions alluded to above, he was cut off by the trial court upon the objection of the prosecutor. We think this was erroneous, and harmful to defendant.

■ The law holds high the value to and right of a defendant in a criminal case of full cross-examination of the witnesses arrayed by the State against him. Cross-examination should be allowed to extend to anything which is relevant to show the improbability of the direct evidence. *State v. Bulna*, 46 *N. J. Super.* 313, 322 (*App. Div.* 1957), affirmed 27 *N. J.* 93 (1958); 3 *Wharton, Criminal Evidence* (12th ed. 1955), § 861.

Had this been an isolated transaction, testimony concerning past unrelated transactions might have been of doubtful relevancy. But here, where defense counsel indicated the purpose of his cross-examination as to prior transactions was to affect the witnesses' credibility and show that the checks were part of a series of transactions, the relevancy of that area of inquiry becomes readily apparent. Had defense counsel been permitted to continue to attempt to reveal a prior pattern of dealing between defendant and complaining witnesses which involved the use of postdated checks and agreements to make successive deposits of such checks, the credibility of their testimony in regard to these particular checks might have been seriously affected. Also, such inquiry might have disclosed a relationship between the parties which

would shed light on defendant's intent or lack thereof to defraud Mrs. Perrotta and Mrs. Lamberti.

The Appellate Division also felt that in the absence of a clear proffer of evidence it could not conclude that the exclusion complained of was prejudicial to defendant, citing *State v. Micci,* 46 *N. J. Super.* 454 (*App. Div.* 1957). We disagree. As we said in *State v. Abbott,* 36 *N. J.* 63, 76–78 (1961), the proffer has a twofold purpose: (1) to inform the trial court sufficiently so that it may reconsider its exclusionary ruling; (2) to avoid an appellate court's conclusion that it cannot find the exclusion to be harmful in the absence of a showing of what counsel hoped to prove by the excluded testimony. However, the failure to make such a proffer will not invariably lead an appellate court to find no harmful error. On the contrary, our courts have found prejudicial harm in such cases where the question excluded was suggestive of proof of issues crucial to the defense, *State v. Abbott, supra,* or where the court had "no real doubt" as to what the offering party expected to prove. *Farber v. Margolin,* 46 *N. J. Super.* 557 (*App. Div.* 1957).

Moreover, as noted above, defense counsel explained that he was seeking to attack the complaining witnesses' credibility by showing that the checks in question were part of a series of transactions. This should have alerted the trial court as to the relevancy of that area of inquiry. And on two other occasions the court cut off defense counsel's attempted explanations, apparently satisfied that it fully appreciated what was involved. *Cf. State v. Abbott, supra.*

In a case such as this, where a defendant is in danger of conviction merely upon a showing that a check was returned for insufficient funds with a notice of protest attached (*N. J. S.* 2A:111–15, 16), the prejudice to the defendant by such a tight rein on cross-examination as occurred in this case is apparent. The crucial element of intent to defraud was a matter of the witnesses' word as against that of defendant. To unduly hamper examination reflecting on credibility is harmful error and the matter must be retried. What we have

said concerning the exclusionary rulings during cross-examination applies with equal force to exclusions of prior transactions during direct examination of Pollack.

Since the matter must be remanded for a new trial we feel obliged to express our dissatisfaction with a portion of the trial court's charge, although that matter has not been raised for our consideration.

In charging the jury pursuant to the prosecutor's request, after explaining the necessary elements for conviction, the court paraphrased the provisions of *N. J. S.* 2A:111–16 as follows:

"(a) The making, drawing, uttering or delivering of a bad check shall be prima facie evidence of intent to defraud.
(b) The certificate of protest of non-payment shall be admissible as proof and shall be presumptive evidence that there were no funds, or insufficient funds in, or credit with, the bank, and that the person making, drawing, uttering or delivering the check had such knowledge."

Subsequently the court attempted to further explain the effect of *N. J. S.* 2A:111–16:

"Now, in connection with reading New Jersey Statute 2A:111–16 the Prosecutor has also asked me to charge this, which I overlooked doing before. And this deals with the question of presumptions that we have been talking about.
'These presumptions are not of course conclusive, but they are rebuttable presumptions.'
Now to explain that to you. In some instances, very rarely, there are what we have known as conclusive presumptions. That means if a certain thing happened, that is it. There is no further explanation. In this situation it is a presumption that is raised by the law as you have remembered it. However, the defendant in the case has a right to overcome it with his testimony or evidence. That is what is known as rebutting a presumption. It is a way of explaining it away. And that, of course, is for the jury to determine, whether this has been accomplished.
'The law sometimes raises presumptions which may operate against the defendant and sometimes casts primarily on the defendant the burden of seeing to it that there is proof in the case of facts mitigating, excusing, reducing the degree of, or avoiding responsibility for a crime.' "

■ We are in accord with the views expressed in *State v. Turetsky,* 78 *N. J. Super.* 203 (*App. Div.* 1963), that it is inappropriate for the trial court to refer in its charge to the *prima facie* language of the statute. *Cf. State v. Ruggiero,* 41 *N. J.* 4 (1963). And we feel that the court's attempted explanation of rebuttable presumptions was unnecessary and capable of prejudicing the defendant in that it tended to convey to the jury the impression that the defendant had the burden of persuading them of his lack of intent to defraud and lack of knowledge of insufficient funds. *State v. Kapelsohn,* 9 *N. J. Super.* 177 (*App. Div.* 1950). The burden of persuasion as to all the elements necessary for conviction does not shift from the State to defendant. *State v. Turetsky, supra,* at *p.* 216 of 78 *N. J. Super.; cf. State v. King,* 37 *N. J.* 285, 294 (1962).

■ The proper effect of the *prima facie* language of *N. J. S.* 2A:111–16 is merely to preclude the granting of a motion for acquittal for lack of specific evidence of intent to defraud in the event the State shows issuance of a check without sufficient funds to support it and knowledge thereof by defendant, and no other facts appear conclusively negating intent to defraud. Once the prosecution has established a *prima facie* case the defendant's only burden

"is to come forward with some substantial evidence tending to negate an intent to defraud, unless such evidence appears on the State's case, at peril of risking a finding of guilt by the jury on all of the elements of the crime, including intent to defraud. If the defendant fails to do so, the judge may tell the jury that it has the right, from the making, drawing, uttering or delivering of a check, draft or order as stated in section [N. J. S.] 2A 111–15, to infer that it was done with intent to defraud." *State v. Turetsky, supra,* 78 *N. J. Super.,* at *p.* 217.

■ We do not understand the language just quoted to mean that if the defendant comes forward with proof tending to negate an intent to defraud, the jury may not be charged that it may nonetheless infer an intent to defraud from the issuance of a check, as stated in *N. J. S.* 2A:111–15. We con-

ceive that what was intended was merely a prohibition against any reference to the words *"prima facie."* Nor does the defendant's coming forward with evidence tending to show lack of knowledge of insufficient funds preclude the jury from inferring such knowledge from the State's proof of the return of a check accompanied by a certificate of protest of nonpayment. See *State v. Kapelsohn, supra.* 9 *N. J. Super.,* at *p.* 181.

Whether or not a defendant has adduced evidence on the issues of intent to defraud or knowledge of insufficient funds, the jury should be charged that, as with other circumstantial evidence, they may infer such intent and knowledge from the making of a check returned with a certificate of protest of nonpayment, but the court should stress the State's burden upon all the evidence at the end of the entire case to persuade the jury of the existence of those elements beyond a reasonable doubt. *State v. Turetsky, supra,* 78 *N. J. Super.,* at *p.* 216; *State v. Riccardo,* 32 *N. J. Super.* 89, 93 (*App. Div.* 1954).

Reversed and remanded.

*For reversal*—Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—5.

*For affirmance* — Chief Justice WEINTRAUB, and Justice HALL—2.