STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ROBERT R. BLASI, DEFENDANT-RESPONDENT.

Argued October 9, 1973—Decided November 20, 1973.

*Mr. L. Steven Pessin,* Deputy Attorney General, argued the cause for appellant State of New Jersey (*Mr. George F. Kugler, Jr.,* Attorney General, attorney; *Mr. Steven E. Pollan,* Deputy Attorney General, on the brief).

*Mr. Robert R. Blasi,* respondent, argued the cause *pro se.*

PER CURIAM. Defendant was convicted on two counts of overdrawing checking accounts, in violation of *N. J. S. A.* 2A:111–15. One of the counts was based on the delivery by defendant of a check in partial payment of a prior debt owed by a corporation in which he had an interest. The Appellate Division reversed the conviction on that count on the ground that, although there was ample evidence of the statutory requirement of knowledge by defendant that there were insufficient funds in his bank account to cover the check, there was no evidence of intent by defendant to defraud the payee of the check. 125 *N. J. Super.* 543 (1973). The Appellate Division relied on *State v. Turetsky,* 78 *N. J. Super.* 203 (App. Div. 1963). The court sustained the conviction on the other count. On cross-petitions for certification we granted that of the State and denied that of the defendant. 63 *N. J.* 499 (1973).

We affirm essentially for the reasons stated in the Appellate Division's opinion, and add the following comment.

■ ■ This court has never heretofore dealt with the question whether fraudulent intent may be inferred by a

jury where a known worthless check is uttered solely as purported payment on account or in discharge of an antecedent debt, with no present benefit from payee to negotiator passing or contemplated. *State v. Turetsky, supra,* which relied on the prior decision of *State v. Riccardo,* 32 *N. J. Super.* 89 (App. Div. 1954), held in the negative on that proposition. We are asked by the State to overrule those decisions on the reasoning in cases like *State v. Bradley,* 190 *Wash.* 538, 69 *P.* 2d 819, 823 (Sup. Ct. 1937), that fraudulent intent is inferable in a past-consideration case on the theory that "the delivery of the check might maintain the drawer's credit for a limited period of time" or "lead the payee to believe that his claim had in fact been paid * * *." We decline to do so. As stated in *Turetsky* and *Riccardo,* both *supra,* fraudulent intent is inferable where the bad check is given to obtain an extension of credit or relief from threatened legal action although tendered as payment of an antecedent debt. 78 *N. J. Super.* at 213; 32 *N. J. Super.* at 94. But the evidence here does not permit any such finding. Considerations such as those mentioned in the *Bradley* case, *supra,* seem to us too insubstantial, standing alone, to justify a finding of the fraudulent intent required by the statute. They are inherent in almost any bad check transaction, and, if deemed sufficient for a conviction, would in effect write the fraudulent intent requisite out of the statute.

Affirmed.

PASHMAN, J. (concurring in part and dissenting in part). I concur in the result reached by my colleagues. I agree because it is the correct conclusion under existing case law upon which the defendant could properly rely. This Court has never dealt with the specific question, and in the present evaluation of this issue, it now appears that the majority has chosen the road set out previously by the Appellate Division in *State v. Riccardo,* 32 *N. J. Super.* 89 (App. Div. 1954) and *State v. Turetsky,* 78 *N. J. Super.* 203 (App. Div. 1963).

While the distinction between present and past considera-
tion is illogical and unnecessary, the majority has seen fit
to further weave one into the fabric of our case law. I
therefore dissent from the majority's rationale in a wholly
prospective manner. This defendant, therefore, would still
benefit from a more favorable jury charge than I am pro-
posing or from a motion for judgment of acquittal. Prospec-
tive application of the law is appropriate under these facts
and circumstances. See Justice Cardozo's opinion in *Great
Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287
*U. S.* 358, 53 *S. Ct.* 145, 77 *L. Ed.* 360 (1932). In a more
recent United States Supreme Court decision, *Jenkins v.
Delaware,* 395 *U. S.* 213, 89 *S. Ct.* 1677, 23 *L. Ed. 2d* 253
(1969), the majority opinion quoted Justice Francis when
he said in *State v. Vigliano,* 50 *N. J.* 51 (1967):

\* \* \* [T]here is a large measure of judicial discretion involved in
deciding both the issues of prospective or retrospective application
and the time from which the new principle is to be deemed controlling.
50 *N. J.* at 65–66.

The statutes dealing with intent to defraud through the
passage of worthless checks are *N. J. S. A.* 2A:111–15 and
16. Any reader who could claim that he has discovered an
intent on the part of the Legislature to treat present and
past consideration differently has a vivid imagination. How-
ever, the majority has found one. *N. J. S. A.* 2A:111–16
clearly states that *"prima facie* evidence of intent to defraud"
is established when the maker knowingly issues a check upon
insufficient funds for the payment of money by any bank.
These are the precise facts in this case; yet the Court is
unwilling to recognize this evidence of intent.

Other jurisdictions with similar statutes have not set
present and past indebtedness at variance from one another.[1]

---

[1]Research has indicated that five States agree with the majority
decision:
Delaware (11 *Del. Code* § 555)

A much cited case opposing New Jersey's view is *State v. Lowenstein*, 109 *Ohio St.* 393, 142 *N. E.* 897 (1924). Justice Allen speaking for a unanimous court said that:

> It was the evident purpose of this statute to prevent the negotiation of false checks drawn on accounts which did not exist, or were insufficient to pay the checks drawn.
>
> \*    \*    \*    \*    \*    \*    \*    \*
>
> \* \* \* Intent to defraud and knowledge of the insufficiency of the fund are questions of fact to be determined on all the evidence by the jury. (142 N. E. at 899).

The Supreme Court of Ohio makes it abundantly clear that the making, drawing, uttering or delivering of any check, draft or order by its maker while such necessary funds are lacking, is *prima facie* evidence of intent to defraud. The mere fact that the check was issued for the repayment of an antecedent debt does not justify a court taking the case from the jury.

Further, assuming *arguendo* a requirement of present consideration to constitute fraud, the statute implicitly recog-

---

Georgia (*Ga. Code Ann.*, § 13–9933)
Kentucky (*Ky. Rev. St.*, § 434.070(1))
Nebraska (*Rev. St. of Neb.*, §§ 28–1212, 28–1213 and 28–1214)
Texas (*Tex. Pen. Code*, Art. 567B)
The jurisdictions in accord with the view of this dissent are:
Arizona (*Ariz. Rev. St.* § 13–316)
California (*Cal. Pen. Code*, § 476a)
Hawaii (*Haw. Rev. St.* 747–1)
Ohio (*Ohio Rev. Code*, § 2911.111)
Washington (*Wash. Code Ann.* § 9.54.050)
District of Columbia (*Wash. D. C. Code* [1951], § 22–1410).
The statutes of twelve jurisdictions require that something of value be obtained in exchange for the worthless check in question. New Jersey has no such requirement. Under those statutes a check given for an antecedent debt is not a crime since nothing tangible has been obtained. These states and statutes are: Colorado (*Col. R. S.*, § 40–14–20); Iowa (*Iowa Code Ann.*, § 713.3); Louisiana (*La. Stat. Ann.*, § 14:71); Maryland (*Ann. Code Md.*, Art. 27, § 142); Nevada (*Nev. Rev. St.*, § 205.130); New Mexico (*N. M. Stat.*, § 40–49–7); Oregon (*Ore. Rev. St.*, § 164.065); Rhode Island (*R. I. Gen. L.*, § 11–41–4); South Dakota (*S. D. Comp. L.*, § 22–41–1); Tennessee (*Tenn. Code Ann.*, § 39–1959, *et seq.*); Utah (*Utah Code Ann.*, § 76–6–505); West Virginia (*W. Va. Code*, § 61–3–39)

nizes the utterance of a bad check as such consideration. Those jurisdictions which hold with the majority's interpretation of the law rely on the narrow point that the issuance of a bad check does not impair the maker's obligation to his creditor. *Berry v. State,* 153 *Ga.* 169, 111 *S. E.* 669 (1922). The inference drawn therefrom, it is said, is that the issuance of a worthless check neither adds to nor subtracts from the continuing obligation. Since the maker derives no value by offering the check (a prerequisite of fraud) and since the original obligation was incurred independent of fraud, the argument runs there can be no fraud in the utterance.

We would dispute the contention that no value accrues to the maker when the creditor takes the proferred worthless paper. The maker deceives the creditor into believing the debt to be satisfied when in fact it is not; thereby the debtor obtains a reprieve from payment and an extra period of time in which to repay. This further period of time acquired by fraud has directly benefited the deceiver while injurying his creditor. The loss of any time during which his money could be working for him, is a loss of something of value to that creditor.

Other jurisdictions do not require an intent to defraud. The mere issuance of a check with knowledge at the time the check is worthless will suffice. New Jersey requires that the State prove that the defendant intended to defraud his victim. These states and statutes are:
Connecticut (*Conn. Gen. St.,* § 53a–128)
Florida (*Fla. Code Ann.,* § 832.05(2))
Illinois (*Ill. St. Ann.,* § 38–17–1)
New York (*N. Y. Penal Law,* § 190.05)
North Carolina (*N. C. Gen. St.,* § 14–107)
North Dakota (*N. D. Code,* § 6–08–16)
Pennsylvania (18 *Pa. St. Ann.* 4105)
Vermont (13 *Ver. St. Ann.* 2022)
There are those jurisdictions which specifically exempt from criminal liability a defendant who has issued a check for past indebtedness. These States are:
Minnesota (*Minn. St. Ann.* § 609.535)
South Carolina (*S. C. Code,* §§ 8–176 and 8–177)
Wisconsin, (*Wisc. St. Ann.,* § 943.24).
Mississippi (*Miss. Code of* 1942, §§ 2153–01 and 2153–02).

The majority in affirming the Appellate Division's opinion, concedes that the defendant was aware that he had insufficient funds in the bank to cover the check and that he deliberately issued it. The majority further concedes that "fraudulent intent is inferable where a bad check is given to obtain an extension of credit." It is fundamental that the process of receiving, depositing and awaiting return of a bad check entails considerable lost time. Delivery of the check maintains the maker's credit for that limited period of time. This is tantamount to an involuntary "extension of credit" and, as I pointed out before, lost time for the creditor is lost money.

The deceiver has consciously deprived his creditor of the ability to further utilize that amount of money in the manner he desires. The issuer who negotiates a bad check knows that even if he is not cheating the immediate recipient, the check may be renegotiated for cash or property. Besides directly injuring his creditor, the maker has created a hardship for

---

On the other hand there are those States which expressly permit a conviction based upon a check issued for a past indebtedness. These States are:

    Arkansas (*Ark. St.* 1947, § 67–720)
    Indiana (*Ind. Stat. Ann.* § 10–2105)
    Michigan (*Mich. St. Ann.*, § 28.326)
    Missouri (*Vern. Ann. Mo. St.*, §§ 561.460 and 561.470)
    Oklahoma (21 *O. S.* 1627)
    Wyoming (*Wyo. St.* §§ 6–39, 6–40 and 6–41).

The final group of jurisdictions have statutes similar to that of New Jersey in that they require the State to prove an intent to defraud and do not require anything of actual value to be obtained. These jurisdictions, however, have not had occasion to pass upon the present problem. These States are:

    Alabama (14 *Ala. Code* 234 (2))
    Alaska (*Alaska St.* § 11.20.230)
    Idaho (*Ida. Code*, § 18–3106)
    Maine (17 *Maine R. S.* 1605)
    Massachusetts (*Mass. Gen. L.* c. 266, § 37)
    Montana (*Rev. Code Mont.* (1947), § 94–2702)
    New Hampshire (*N. H. R. S.*, § 582.12)
    Virginia (*Code of Va.*, (1950), § 6.1–115)
    Kansas (*Kan. St. Ann.*, § 21–3707)

merchants handling bad checks with respect to resultant improper bank and commercial credits. See *Final Report of the New Jersey Criminal Law Revision Commission,* Vol. II, Commentary, *pp.* 241–242 (1971).

I believe that in most cases the final determination of intent to defraud should be decided by a jury. As in any criminal prosecution, the significant elements of the offense should be weighed and evaluated by that jury. When the State has produced evidence that a defendant has written a check on insufficient funds, a *prima facie* case of intent to defraud is made out. *State v. Pollack,* 43 *N. J.* 34 (1964). The certificate of protest of nonpayment shall be presumptive evidence that there were insufficient funds in such bank and that the person making the check knew that there were no funds in said bank. "The *prima facie* language of *N. J. S. A.* 2A:111–16 is merely to preclude the granting of a motion for acquittal for lack of specific evidence of intent to defraud." 43 *N. J.* at 42.

This is a rebuttable presumption and the State's case may be negated and neutralized when the defendant introduces contrary or contradicting evidence. Even if the defendant has not produced any evidence to rebut the *prima facie* case of the State, the jury is still free to find for the defendant. The duty and province of a jury is to decide whether the State has sustained its burden of proof beyond a reasonable doubt. The issue here is whether the defendant intended to defraud his creditor. The decision is the function of a jury.

While the ambit of the statute seems to me broader than desirable or even necessary to curb the abuses of check fraud, the responsibility for that determination vests in the Legislature, not in the members of this Court. The Legislature has by statute explicitly designated the type of behavior susceptible to punishment and a distinction between antecedent and present consideration is not included in that designation. The Legislature can narrow the scope of criminal liability to ac-

complish its special purposes, but our Court is without that power.

Accordingly, I would affirm the result and in a wholly prospective fashion dissent as to the majority's rationale.

*For affirmance*—Justices JACOBS, SULLIVAN, PASHMAN (concurring in result) and CLIFFORD and Judge CONFORD—5.

*For reversal*—None.