Appellant was charged by indictment with violation of Alabama's Worthless Check Act, Section 13-4-113, Code of Alabama 1975. An earlier prosecution, commenced in the Court of Common Pleas at Tallapoosa County on the same check, was enjoined by the Referee in Bankruptcy who found that the purpose of that prosecution was to collect a civil debt. This indictment was returned subsequent to the order of the Referee in Bankruptcy. Appellant entered a plea of not guilty and filed a motion to dismiss on the grounds that the prosecution was being brought for the purpose of collection of a civil debt. The motion was denied following a hearing. The jury returned a verdict of guilty as charged and a sentence of $500.00 fine and costs was imposed by the court. Sentence was suspended pending this appeal.
The prosecuting witness, Jack Thornton, was an oil jobber who sold and delivered oil to appellant as a retail customer. Appellant operated a service station owned by Thornton. On July 15, 1975, Thornton received a check made out to Thornton Oil Company in the amount of $2,000.00 signed by appellant. This check was in payment of gasoline delivered the previous week. The check was returned to Thornton on July 18 from the bank, marked "Insufficient Funds." There was testimony from employees at the bank that the check was not paid because it lacked sufficient funds and that it was returned to the payee.
The evidence was in conflict on the manner of delivery of the check to Thornton. Appellant and his wife testified that she wrote the check, signing her husband's name, and delivered it to Thornton. Mrs. Harris testified that her husband had told her not to write any more checks but that Thornton came into the service station, told her that appellant had said to write him a check for $2,000.00 which she did and delivered it to him. Thornton and his wife testified that they did not actually see the check signed but that appellant handed the check to Thornton himself.
As part of his defense appellant attempted to show that he had a line of credit with the Bank of Dadeville and that, based on past transactions with the bank, he expected that the check would be paid. He testified that on numerous occasions someone from the bank would call him and tell him that he was overdrawn and that the bank would hold the check for him to deposit the money. Appellant's testimony was corroborated by employees and officers of the bank.
The sections of the Alabama Worthless Check Act particularly relevant to this prosecution are as follows: Section 13-4-111 which provides that "draw" means the making, drawing, uttering, issuing or delivering of a check. This section also provides that the statute shall apply to effectuating the ostensible payment of any due of past-due debt or obligation of whatsoever form or nature. Section 13-4-113 provides that it is unlawful for any person to draw, cause or direct the drawing of a check with intent to defraud, knowing at the time of the drawing that there are insufficient funds on deposit, or that there is not enough credit with the depository to pay the amount of the check in full. Section 13-4-118 is the prima facie evidence of fraudulent intent section, which provides that, against the person drawing the check or causing or directing the drawing of the check, the drawing of such check, payment of which is refused by the depository, shall be prima facie evidence of intent to defraud, and of knowledge of insufficient funds in or credit with such depository. This section also includes a provision allowing for the drawer of the check to make the check good within ten days after receiving notice of its refusal *Page 259 
on presentment. This proviso operates to prevent the use of the prima facie section by the prosecution if the defendant has paid the check within the time provided by the section. It does not, however, prohibit a prosecution but rather requires it to proceed without the aid of a prima facie section. Section 13-4-122 provides penalties for violation of the Worthless Check Act. The sentence of appellant was appropriate within the guidelines set forth in this section under Category III. Section 13-4-121 is the legislative acknowledgement of the attempted use of the criminal worthless check act to collect a civil debt and provides a remedy wherein a person who has filed a complaint alleging a violation of this act or furnished information resulting in the prosecution who shall suggest that the case be dismissed without just cause or legal excuse shall be taxed with all costs accruing in the proceeding. This is the only remedy provided by the act itself for this improper use of the statute.
Appellant alleges that the state failed to make a prima facie case in that the evidence showed that Mrs. Harris, not appellant, was the drawer of the check, and that the statute applies only to the drawer or maker of the check.
Appellant further contends that where the check is given for an antecedent debt the requisite intent to defraud requires that the check be given in attempt to secure further extension of credit and that, since appellant had already closed his business and filed a petition in bankruptcy, this proposition is precluded in this case. Smith v. Southeastern FinancialCorporation, Ala., 337 So.2d 330.
The appellant also contends that this prosecution was an unconstitutional application of the Alabama Worthless Check Act as applied against him in that the prosecution was brought for the purpose of collecting a civil debt. Tolbert v. State,294 Ala. 738, 321 So.2d 227.
Appellant was prevented from putting forth the affirmative defense of credit with the bank such as would allow him a reasonable expectation that the draft would be paid upon presentment.
As applied to this case the offense contemplated by the Worthless Check Act is complete when the following occur: 1. The check is drawn as defined by the Act to include drawing, uttering, issuing or delivering; 2. With intent to defraud; 3. Knowing at the time of drawing that there are insufficient funds in the drawee bank to cover the check; or 4. Knowing at the time of drawing that the depository on which the check is drawn does not exist or that drawer has no account with an existing depository. Tolbert v. State, supra.
The identity of the person who drew the check within the meaning of Section 13-4-111 presented a question of fact for the jury to decide. Two possibilities were presented by the evidence. The jury might have concluded that appellant's wife wrote and delivered the check to Mr. Thornton in contravention of appellant's instructions, or that either she or appellant wrote the check and appellant delivered it to Mr. Thornton. If appellant actually signed the check as drawer or only delivered it, either action was within the meaning of the statute. There is a difference in the standard of proof, however, if he onlydelivered the check. The statute clearly provides that the prima facie section (13-4-118) operates only against the maker
or drawer of the check. If the accused is a passer or deliverer of the check, intent to defraud must be proven without the aid of this section.
Appellant argues that the requisite intent to defraud where a check is given for an antecedent debt requires that the check be given in an attempt to secure further extension of credit and that since he had already closed his business and filed petition in bankruptcy the intent to defraud cannot be inferred in his case. Appellant cites Smith v. Southeastern FinancialCorporation, Ala., supra, in support of this contention. In that case our Supreme Court considered the meaning of intent to defraud under the civil Worthless Check Act. The Court found that the legislature intended that intent to defraud had the same meaning *Page 260 
in both statutes. While stating that knowledge that checks are worthless does not necessarily amount to fraudulent intent if the checks are given for antecedent debt, the Court went on to say that there may be instances in which one has the requisite intent to defraud when writing a worthless check for an antecedent debt, i.e., to secure a further extension of credit. This language by the Court may reasonably be taken to mean that the purpose of securing a further extension of credit is an example of an intent to defraud in such a case but is not the only purpose which would evidence fraudulent intent. In Statev. Blasi, 64 N.J. 51, 312 A.2d 135, the Supreme Court of New Jersey dealt for the first time with the question of whether fraudulent intent may be inferred where the known worthless check was given solely as purported payment for an antecedent debt. The New Jersey statute under which that prosecution was brought is similar to the one in Alabama. See Note 1 to the opinion of Justice Pashman concurring in part and dissenting in part. That Court held that where the check was given solely for payment of an antecedent debt, with no present benefit from payee to negotiator passing or contemplated, fraudulent intent may not be inferred. Fraudulent intent is inferable where the bad check is give to obtain an extension of credit or relief from threatened legal action although tendered as payment of an antecedent debt.
Appellant contends in brief that since he had already closed his business and filed petition in bankruptcy the check could not have been given to attempt to secure a further extension of credit. Chronological sequence of events as shown in the record, however, reveals the following:
November 1974 — Harris commenced business
7-15-75 — $2,000 check issued
 7-18-75 — Check returned to Thornton, unpaid due to insufficient funds
 7-22-75 — Thornton signed affidavit and procured warrant for Harris' arrest for a worthless check from the Court of Common Pleas Tallapoosa County, Alabama
7-23-75 — Harris closed business
7-26-75 — Harris arrested
7-26-75 — Harris posted bond, Circuit Court
 7-29-75 — Harris posted bond, Court of Common Pleas
 8-15-75 — Harris files petition in Bankruptcy in U.S. District Court for the Middle District of Alabama, Eastern Division
 8-19-75 — Bankruptcy Judge issues temporary restraining order restraining Thornton from any further prosecution of any criminal proceedings against Harris in Court of Common Pleas
 9-5-75 — Bankruptcy Judge permanently enjoins Thornton from prosecuting Harris in Court of Common Pleas
 10-7-75 — Harris indicted by Grand Jury for violation of Worthless Check Act
 2-12-76 — Harris receives discharge of debts in bankruptcy
11-8-77 — Trial commenced.
It is apparent that the appellant had not closed his business nor filed a petition in bankruptcy on the day that the check was given to Mr. Thornton. No evidence was presented by either side on the motives of appellant in giving the check for $2,000.00 to Mr. Thornton other than that the check was intended as payment for the gasoline previously received.
Appellant's next contention is that the prosecution against him was an unconstitutional application of the Worthless Check Act, in that it was brought for the purpose of collecting a civil debt. The constitutionality of Alabama's Worthless Check Act has been considered by our Supreme Court in Tolbert, supra. Our statute, as well as the great majority of similar statutes in other states, has been held to be constitutional against the challenge that such statutes allow imprisonment for debt. The saving feature of the statute which distinguishes it *Page 261 
from punishment for debt is the requisite intent to defraud. Statutes not containing a requirement of fraudulent intent have not been upheld. The rationale is that the statute punishes the crime of intent to defraud rather than the inability to pay the debt. The gravamen of the offense therefore is the intent to defraud and must be proven in order to sustain a conviction under the statute.
Section 13-4-118 of the statute provides a legislative aid to the prosecution in requiring proof of this requisite element of the offense by making knowledge at the time of the drawing of the check that there are insufficient funds in the drawee bank to cover the check prima facie evidence of intent to defraud.
In upholding the constitutionality of the Worthless Check Act the Alabama Supreme Court acknowledged the tendency on the part of the unscrupulous to employ a criminal Worthless Check statute for the purpose of collection of a civil debt. This is a practice which has been universally condemned by the courts. In Tolbert, Justice Shores stated that the improper employment of the statute to collect a civil debt would be an unconstitutional application of such statutes and noted the remedies by the debtor when the statute was so employed: (1) Section 13-4-121 of the Act itself provides that any person who initiates the prosecution or furnishes information in relation to the prosecution who shall suggest that the case be dismissed without just cause or legal excuse shall be taxed with all costs accruing in the proceeding; (2) The civil remedy of malicious prosecution. See Kitchens v. Barlow, 250 Miss. 121,164 So.2d 745; (3) Liability for abuse of process. See HotelSupply Company v. Reid, 16 Ala. App. 563, 80 So. 137.
Appellant further contends that he was prevented from putting forth the affirmative defense of credit with the bank such as would allow him a reasonable expectation of payment. This subject is discussed generally at 9 A.L.R.3rd 719. The rationale of the "expectation of payment" defense is that if it can be shown that the accused reasonably believed that the check would be paid on presentation, either because of an arrangement with the drawee bank for credit, or with some third person for funds which would be deposited by the time the check was presented for payment, then the essential element of fraudulent intent is lacking. In proof of this expectation of payment the appellant attempted to show at trial that, on all prior occasions when he had drawn an insufficient funds check, the bank had called him and held the check until he could deposit the money needed to cover it and that this constituted an extension of credit on an agreement between him and the Bank of Dadeville that his check would not be returned to payee. The Vice President of the bank testified, however, that his bank did not have and had never had a policy of paying overdrafts, that the determination to call a customer and inform him of insufficient funds and hold the check was made on an individual basis depending on the customer's past history of depositing sufficient funds to cover the check. He emphatically testified that there was no credit arrangement with appellant as such arrangements were not within the bank's policy.
Appellant cites to this Court, however, the case of Elliottv. Caheen Brothers, 228 Ala. 432, 153 So. 613. That case involved a civil suit for malicious prosecution based on a conviction under the Worthless Check Act dealing with the issue of proving credit with the bank sufficient to overcome the statutory presumption of fraud. The Court stated, "Credit is defined by the statute, but may include an implied understanding from past course of dealing and known financial responsibility." The statute defines credit as any arrangement or understanding with the drawee for the payment of the check. Under the authority of Elliott, therefore, it would seem that the past course of dealing between appellant and the drawee bank (i.e., that the bank had always called appellant and allowed him the opportunity to cover his checks and that none of his checks had previously been returned) constituted credit within the meaning of the statute, and that this evidence was sufficient to *Page 262 
rebut the intent to defraud on the part of the appellant.
Since this testimony was allowed to go to the jury, appellant cannot argue that he was prevented from presenting the affirmative defense of a reasonable expectation. However, the following requested charge was refused by the trial court:
 "Ladies and Gentlemen of the Jury. I charge you that no person may be found guilty of drawing a check issued without sufficient funds if you find from the evidence that the defendant had such credit with said Bank of Dadeville as to lead him to believe and have a bona fide belief and reasonable belief that the check will be honored by way of overdraft. This line of credit may include an implied understanding on the part of the defendant from the past course of dealing with the Bank of Dadeville and the course of conduct of the bank in the past with the defendant."
This charge appears to be a correct statement of law inElliott, supra, and its refusal by the trial court presents a question of whether there was reversible error based on the refusal to give the charge. Nowhere in the oral charge did the trial court charge the jury on the defense of reasonable expectation of payment nor was any reference made in the oral charge to the meaning of credit or its effect on the element on fraudulent intent.
We think that under the evidence contained in the record the above requested instruction should have been given.
Section 20, Constitution of Alabama of 1901, provides, "That no person shall be imprisoned for debt."
The evidence reflects that this prosecution was initiated solely to recover debts owed by Harris to Thornton arising from their business arrangement.
The defendant made a motion to dismiss the indictment on the ground of the unconstitutional application of the statute. On voir dire, Thornton testified as follows:
 "Q. And you said to him you didn't want the charges to start with, didn't you?
 "A. What I told him was that if he'd come to you and Mr. Adair with the money and we'd let him settle on what, what was the court's right it would be agreeable with me.
"Q. To drop the charges?
 "A. If he paid the money, if it was agreeable with the —
 "Q. _ _ _ and that's what you're here for today is to get your money, isn't it?
"A. (no answer)
 "Q. Now, did you ever suggest to Mr. Harris that the money be taken to me or to Mr. Adair [Dadeville attorney] or some to Mr. Dillon [Trustee in Bankruptcy] or some third party because the bankruptcy court had told you you couldn't collect?
 "A. Yeah, I told him if he carried it to you all and you all would settle it then it would be all right with me.
 "Q. You indicated to him, though, that you didn't want him in jail, didn't you?
"A. I don't want nobody in jail.
"Q. You just want your money, is that correct?
"A. That's right.
 "Q. And you used this prosecution as an attempt to collect these debts, haven't you?
 "A. Well, I had the warrant sworn out for, the checks that come back.
 "Q. You were, you at that point were willing to drop the charges for the checks if he paid you the sixty, the sixty-one-hundred-dollars, is that not correct?
"A. If it was agreeable with you and Mr. Adair.
 "Q. It certainly would have been agreeable with me, no problem with that and Mr. Adair was attempting to pick up the checks too, wasn't he?
"A. I don't know that.
 "Q. He was trying to collect the checks for you, wasn't he, for you?
"A. I don't know.
 "Q. That was what you talked to Mr. Adair about, wasn't it?
 "A. I give him the checks to have the warrant sworn out. *Page 263 
 "Q. Well, you signed the warrant in hopes of collecting the checks?
"A. That's right."
On redirect examination the following questions were asked by the State and Thornton's answers are set out below:
 "Q. You took every means possible to try to collect the money from Mr. Harris, Sonny Harris, over there.
 "Ms. Sullivan: And we object if it please the court. It calls for a conclusion of the witness. Ask the witness what he's done.
"Q. You avoided this in every way you possibly could.
"Ms. Sullivan: And we object.
"Q. To keep from prosecuting, is that correct?
"Ms. Sullivan: We object, if it please the court.
"Q. Answer the question.
"The Court: You may answer.
"A. Yes sir, well, about ten days _ _
"The Court: _ _ _ just tell what you did.
 "A. When the case was coming up Mr. Harris come to me — I'm going to tell it just like it was.
"Q. That's what I want you to do.
 "A. About ten days before the case come up like today he came to me and wanted to do something about it and he promised me everything in the world. Then I come up here and had the case put off. The last time we had it put off. Ms. Sullivan said, `Now I hope you all get your all business together because I'm tired of coming up here and trying to talk with you all. Get your business together.' That's right."
The conclusion is inescapable that the interest of the witness Thornton was superior to the interest of the State in this prosecution. This seems to fit well within those "unscrupulous" cases the court discussed in Tolbert, supra, wherein the court held:
 "But we agree with the petitioner that if improperly employed to collect a civil debt, such would be an unconstitutional application of such statutes. We further agree that such statutes lend themselves to use by the unscrupulous who seek only payment of debts and have no interest in criminal prosecution other than as a means of collecting money allegedly due them. This court has repeatedly condemned the use of threat of prosecution as a means of collection of worthless checks. [Goolsby v. State, 213 Ala. 351, 104 So. 901 (1925).]
 ". . . Further, in upholding the constitutionality of the Worthless Check Act, we should not be misunderstood as sanctioning its use for debt-collecting purposes."
We are clear to the conclusion that this prosecution was instituted for the collection of a civil debt and that the conviction was wrong and unjust. To allow this conviction to stand would be a travesty on justice.
The judgment of conviction is reversed and appellant is discharged.
Reversed and Rendered.
All the Judges concur.