ON REHEARING
BOWEN, Judge.
The Alabama Court of Criminal Appeals hereby withdraws its original opinion of November 25, 1980, and files the following opinion.
The defendant was charged and convicted of issuing a worthless check in violation of an ordinance of the City of Boaz.[1] Sentence was a fine of three hundred dollars and costs.
During oral argument, the City Prosecutor argued that the defendant had not been arraigned and that the case would have to be reversed for this reason. The constitutional and statutory provisions relating to a criminal prosecution by the State are not applicable to the violation of municipal ordinances unless so provided. City of Mobile v. McCown Oil Co., 226 Ala. 688, 148 So. 402 (1933); Birmingham v. Evans, 53 Ala.App. 358, 300 So.2d 396, cert. denied, 293 Ala. 136, 300 So.2d 401 (1974). The prosecution for violation of municipal ordinances is statutory and quasi-criminal in nature. Duncan v. City of Scottsboro, 267 Ala. 259, 104 So.2d 447 (1958); Donahey v. City of Montgomery, 43 Ala.App. 20, 178 So.2d 832, cert. denied, 278 Ala. 708, 178 So.2d 837 (1965). Since there is no statute requiring an arraignment in the prosecution for the violation of a municipal ordinance, an arraignment is not required.
“Where the proceedings for violation of an ordinance are considered civil in their nature, it is held that an arraignment is not necessary. Also, if the proceedings for violation of municipal ordinances are not by way of indictment, an arraignment and plea of not guilty is not necessary, even though such proceedings may be regarded as quasi-criminal.”
62 C.J.S. Municipal Corporations, Section 338 (1949).
The defendant was in the business of buying, reconditioning and reselling cars. Walter Sivils was in the retail tire business and the defendant was a regular customer. A regular practice was established whereby merchandise purchased by the defendant during one month would be paid for at the first of the next month.
On June 6, 1977, the defendant wrote a check to Sivils in the amount of $464.00 for purchases made during the preceding month. The defendant gave this check to George Hibbs to deliver to Sivils. Hibbs worked in the same building and operated a business “like” the defendant’s.
The defendant testified that, when he gave the check to Mr. Hibbs, he told Hibbs that the check was not covered by sufficient funds in the bank and that he did not have the money to pay Sivils.
“I said, now, George, I haven’t got the money in the bank. He (George) said, well, he will wait a couple of days before he turns it in. I told George I would be back from the sale in a couple of days after selling the cars.”
The defendant testified, in substance, that, after he wrote the check, he was going to *536 sell some of his cars at a sale and the proceeds from this would be deposited in the bank to cover the check. The defendant testified that a few days before he wrote the check Sivils asked him when he was going to pay his bill. The defendant replied, “I told him it would be a few days before I went to the car sale and sold some cars.” The defendant also stated: “And I had the feeling, you know, the way I understood it, when I sent the check to him that he was going to wait until it (I) got back (from the auto auction).”
It was stipulated that George Hibbs’ testimony would be that he delivered the check to Sivils at the request of the defendant and that the defendant told him at the time “that the check would be good and to tell Walter Sivils it would be good.”
Sivils deposited the check on June 7th, the day after it was written, and the check was returned for insufficient funds.
Although the defendant went to the auto auction or sale, he did not sell any of his cars. He testified that because of this he did not have the money to cover the check. The defendant did not inform Sivils of this. The defendant testified: “I figured he done knowed it because I done got a notice where the check had done been run through the bank and returned.” Sometime after the check had been dishonored, the defendant paid Mr. Sivils $50.00 of the $464.00 he owed.
I
The defendant contends that, as a matter of law, he did not have the requisite intent to defraud because the check was given for an antecedent debt. The issue here is whether a criminal prosecution under Alabama Code 1975, Section 13-4-113 is prohibited where the worthless check is given for an antecedent debt.
The offense defined by Section 13-4-113 “is complete when the check is drawn ... with the intent to defraud, knowing at the time of drawing that there are insufficient funds in the drawee bank to cover such check.” Tolbert v. State, 294 Ala. 738, 742, 321 So.2d 227 (1975). Here there is no dispute that (1) at the time of the drawing the check, the defendant knew that he had insufficient funds in the bank to cover the check and (2) that the defendant received notice of the dishonor but never made good the check. However, to prove a violation of the Worthless Cheek Act, the prosecution must prove a specific intent to defraud. Tolbert.
In Smith v. Southeastern Financial Corp., 337 So.2d 330 (Ala.1976), our Supreme Court found that intent to defraud had the same meaning under Alabama’s Civil and Criminal Worthless Check Acts. Harris v. State, 378 So.2d 257 (Ala.Cr.App.), cert. denied, 378 So.2d 263 (Ala.1979).
“Knowledge that checks are worthless does not necessarily amount to a fraudulent intent, if the checks are given for antecedent debts. Berry v. State, 153 Ga. 169, 111 S.E. 669 (1922), Commonwealth v. Hammock, 198 Ky. 785, 250 S.W. 85 (1923), State v. Blasi, 64 N.J. 51, 312 A.2d 135 (1973).
“ ‘Intent to defraud’ requires a scheme to unfairly deprive someone of something of value. There may be instances in which one has the requisite intent to defraud when writing a worthless check for an antecedent (i. e. to secure a further extension of credit).” Smith, 337 So.2d at 333.
The Court also held that the payment of an antecedent debt by use of a worthless check would sustain a cause of action under the Civil Worthless Check Act “provided the check was withdrawn with ‘intent to defraud’. 32 Am.Jur.2d, False Pretenses, Section 78, and Annotation 59 A.L.R.2d 1159, 1163.” Smith, 337 So.2d at 333.
Section 13-4-114 prohibits the issuance of a worthless check without reference to whether anything of value is thereby obtained. In 32 Am.Jur.2d, False Pretenses, Section 78 (1967), cited by the Court in Smith, we find:
“However, some worthless check statutes make it an offense to issue such a check, even though no money or property is obtained in return. Under statutes of *537 this type, the offense may be committed by giving a worthless check in payment of a pre-existing debt. In such circumstances, however, some cases hold that although the payee need not be actually defrauded, an intent to defraud is required, and that since it is apparent that the maker of the check did not deprive the payee of any right or procure anything of value from him, the maker of the check did not give it with the intent to defraud, which is an essential element of the offense, and therefore no offense was committed.”
The citation at 59 A.L.R.2d at 1163, also cited by the Supreme Court in Smith, lists several cases which have held that the intentional issuance of a worthless check in payment of a past due indebtedness violates those statutes which prohibit the issuance of fraudulent checks without reference to whether anything of value is obtained thereby.
Commenting on State v. Blasi, 64 N.J. 51, 312 A.2d 135 (1973), cited by our Supreme Court in Smith, this Court noted, after recognizing the similarity of the Alabama and New Jersey statutes:
“That court (New Jersey) held that where the check was given solely for payment of an antecedent debt, with no present benefit from payee to negotiator passing or contemplated, fraudulent intent may not be inferred. Fraudulent intent is infera-ble where the bad check is give(n) to obtain an extension of credit or relief from threatened legal action although tendered as payment of an antecedent debt.”
Harris, 378 So.2d at 260.
The partial dissent in Blasi contains an exhaustive analysis of the varying worthless check statutes in each state. 312 A.2d at 137, n. 1. In that footnote, Alabama and Idaho, whose significance will presently become apparent, are described as being in that “group of jurisdictions hav(ing) statutes similar to that of New Jersey in that they require the State to prove an intent to defraud and do not require anything of actual value to be obtained.” The dissent also notes that none of these jurisdictions have had occasion to pass on the present problem.
As already stated the Alabama Supreme Court held that payment of an antecedent debt by use of a worthless check would sustain an action under the Civil Worthless Check Act, provided the check was drawn with the intent to defraud. Smith, 337 So.2d at 330.
In State v. Campbell, 97 Idaho 331, 543 P.2d 1171 (1975), the Supreme Court of Idaho ruled on the question presently before us and held that the fact that a check was issued in payment of preexisting obligation does not preclude a criminal prosecution for issuing a worthless check. This is in line with the holding of the Alabama Supreme Court in Smith. However, the Idaho Court held that the statutory “presumption of intent to defraud cannot constitutionally be applied in that narrow class of cases where it is shown that the insufficient funds check was given in payment of a preexisting obligation.”
The Court found that there was no connection or rational relation between the fact proved (that the defendant wrote the check without sufficient funds in the bank for an antecedent debt) and the ultimate fact to be presumed (that the defendant had the intent to defraud).
“However, ... when an insufficient funds check is given in payment of a preexisting obligation it is not likely that the maker had the intent to defraud, although it is legally possible that he did have such an intent. Therefore, we hold that to the extent that I.C. Section 18-3106(d) presumes an intent to defraud from the giving of an insufficient funds check in payment of a preexisting obligation that presumption is not based upon common experience, there being an insufficient relationship ‘between the fact proved and the ultimate fact to be presumed.’ State v. Grimmett, supra, 33 Idaho 203, 193 P. 380 (1920). We cannot say that ‘the presumed fact is more likely than not to flow from the proved fact.’ Leary v. United States, 395 U.S. 6, 89 *538 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and therefore the presumption under the circumstances of this case is arbitrary, irrational and therefore unconstitutional

“In conclusion, we hold that in prosecutions under I.C. Section 18-3106 in which it is alleged that the check in question was given in payment of a preexisting obligation the state may not rely on the presumption that the maker had an intent to defraud raised in subparagraph (d) of the statute. The state must present evidence which proves beyond a reasonable doubt that the defendant had the requisite intent to defraud. If the state fails to present such proof, the defendant would be entitled to a judgment of acquittal.” Campbell, 543 P.2d at 1174-75.
Finding Campbell persuasive, under the facts of this case, we do not think that the statutory presumption of fraudulent intent of Section 13-4-118 can be applied. The City could have shown the necessary intent to defraud by examining the reason for which the check was drawn. Here there was no evidence that, at the time the defendant drew the check, he was attempting “to effectuate the ostensible payment of any due or past due debt or obligations.” Alabama Code 1975, Section 13-4-111(8). The evidence does indicate that the defendant wrote the check knowing that he had insufficient funds and that the check was dishonored. However the evidence also indicates that when the defendant wrote the check he intended to deposit the funds to cover it — that he had no intent to defraud at the time he drew the check.
In conclusion, we hold that where a “worthless check is given solely for payment of an antecedent debt, with no present benefit from payee to negotiator passing or contemplated, fraudulent intent may not be inferred.” Campbell, supra; Blasi, supra. Fraudulent intent is inferable where the check is given to obtain an extension of credit, relief from threatened legal action or to effectuate the ostensible payment of any due or past due debt or obligation even though the check is tendered as payment of an antecedent debt. The evidence here does not justify any such finding and the defendant’s conviction is due to be reversed. Because the double jeopardy clause bars a second trial after a reversal of a conviction because of the insufficiency of the evidence to convict, the defendant’s conviction must be reversed and rendered. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
II
Section 3 of Ordinance No. 454 of the City of Boaz provides “(t)hat the punishment for a violation or offense involving said state misdemeanor statutes shall be that as set by state law.” Although the defendant was fined three hundred dollars, Alabama Code 1975, Section 13-4 — 122, provides that “(w)hen the check is for $100.00 or more but less than $500.00” the penalty for the first offense is “(a) fine of not less than $100.00 nor more than $200.00.” The check in this case was for $464.00 and it does not appear that the defendant had a prior conviction. The sentence of $300.00 was therefore illegal and excessive in that it exceeded the sentence authorized by statute. Howard v. State, 390 So.2d 32, (Ala.Cr.App.1980).
III
The minute entry contained in the record reveals that the defendant’s trial was continued on four separate occasions either “for filing of Civil action on checks involved” or “for Civil Action.” While the trial judge, in finding the defendant guilty as charged, specifically found that “there was no evidence that the prosecuting witness’ motive was the collection of a debt, a practice universally condemned (Harris v. State, 378 So.2d 257)”, the continuances of the defendant’s trial date for the stated reasons strongly imply the contrary. In oral argument, the City stated that these continuances were granted at the defendant’s request. That contention is not supported by the record. However, since the *539 cause must be reversed and rendered because of the failure of the City to offer any evidence of the defendant’s intent to defraud, we do not decide that issue.
Although the City made an appearance at oral argument, it has filed no brief or written response to the several issues presented by the defendant on appeal. The judgment of the Circuit Court is reversed and rendered.
ORIGINAL OPINION WITHDRAWN; APPLICATION FOR REHEARING GRANTED; REVERSED AND RENDERED.
All Judges concur.

. Ordinance No. 454 of the City of Boaz provides, in part, that “ail existing State misdemeanor statutes .. . are now and hereinafter declared to be ... ordinances of the City of Boaz.” Alabama Code 1975, Section 13 — 4—113 makes it a criminal offense (a misdemeanor under Section 13-4-122) to issue a check without sufficient funds or credit.