Leonard E. RIDENHOUR *v.* STATE of Arkansas

CR 83-55                                         650 S.W.2d 575

Supreme Court of Arkansas
Opinion delivered May 16, 1983

*Wayland A. Parker,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Leonard Ridenhour, appellant, was charged with violation of our "hot check" law, Ark.

Stat. Ann. § 67-720 (Supp. 1981)[1] and raises issues on appeal that require our interpretation of that statute.

On three separate occasions in February and March of 1982, Ridenhour purchased cattle from the Montgomery County Auction, Inc. He took possession of the cattle and charged the purchases to his account. On three subsequent dates in February and March, he wrote checks for each of the previous purchases. All three checks were returned for insufficient funds. On March 23, 1982, Ridenhour delivered to Montgomery a check for $25,147.77, the total amount of the three smaller checks he had written. This check was also returned for insufficient funds. An information was filed on April 5, 1982, charging Ridenhour with violation of § 67-720 for the $25,147.77 check. The jury found him guilty and fixed his punishment at ninety days imprisonment and a fine of $1,000.00.

Appellant raises two issues on appeal, both of which have merit. He first contends that his motion to dismiss should have been granted, as the check for $25,147.77 was only evidence of a debt for a sale on an open account which would not be a violation of § 67-720. We note first that the original statute, prior to a 1977 amendment, specifically included "pre-existing debts" as a violation. That phrase, however, was deleted by the 1977 amendment. That the pre-existing debt under the circumstances of this case does not come within § 67-720 as it reads today, is bolstered by our decision in *Sharpensteen* v. *State,* 222 Ark. 519, 261 S.W.2d 537 (1953). Under similar facts, the appellant was charged

---

[1] 67-720. Obtaining property with check drawn on insufficient funds. — It shall be unlawful for any person to procure any article or thing of value, or to secure possession of any personal property to which a lien has attached or to make payment of any taxes, licenses or fees, or for any other purpose to make or draw or utter or deliver with intent to defraud. any check, draft or order, for the payment of money, upon any in-state or out-of-state bank, person, firm or corporation, knowing at the time of such making, drawing, uttering or delivering, that the maker, or drawer has not sufficient funds in, or on deposit with, such bank, person, firm or corporation for the payment of such check, draft or order, in full, and all other checks, drafts or orders upon such funds then outstanding.

under our "hot check" statute (67-717[2]) for checks drawn on out-of-state banks. This statute, like our current § 67-720, does not include pre-existing indebtedness and we found that there was no violation in *Sharpensteen.* The appellant in that case had purchased some chickens in Missouri, which were delivered to him the next day in Arkansas. A few days later the seller came to appellant's place of business in Arkansas and picked up the check for the chickens. The check was drawn on a bank in Oklahoma and returned for insufficient funds. We found that under the wording of that statute, no violation had occurred:

> Obviously, on the facts here, appellants had bought and received the chickens in Missouri three or four days before they delivered their check to Edwards in Arkansas. By delivering this check to Edwards, appellants secured nothing in Arkansas in addition to the chickens which they already had, which had been purchased in Missouri, and there delivered to them a few days before. This sale and delivery in Missouri constituted, in effect, an open account. *Sharpensteen* at 522.

Additionally, our investigation of other decisions reveals that those jurisdictions with similar "hot check" statutes hold generally that payment of a pre-existing debt by a worthless check is not a violation of those statutes. See 59 ALR 2d 1160.

The second contention is that the trial court erred in not granting a directed verdict for lack of evidence that Ridenhour obtained anything of value through his actions, as required by § 67-720. The question went to the jury on whether Ridenhour, by exchanging the one large check for

---

[2](Statute in force at time of *Sharpensteen* decision).§ 67-717. Drawing a check or draft on bank outside State with insufficient funds. — It shall be unlawful for any person in this State to secure any goods, wares, and merchandise, credit, or anything of value by means of a check or draft drawn upon any bank or institution outside of the State of Arkansas when said check or draft shall be dishonored or payment refused on account of the giver of such draft or check not having sufficient funds on deposit in said bank to pay said check or draft.

the three smaller ones, had procured something of value. The state offers three ways in which the appellant obtained something of value through this exchange. First, they suggest, that had Montgomery not given up the three smaller checks, the drawee bank would have honored any of the smaller checks *singly*, if there were sufficient funds, whereas after the exchange, Ridenhour was protected from the sellers collecting on any one of them. However, at the time of the exchange — the record shows that there were insufficient funds to cover any one of the three smaller checks — and this was true throughout the remainder of the month of March. Thus, both Montgomery and Ridenhour remained in the same position they had been in prior to the exchange of the three smaller checks for the one larger one.

The state argues that by the exchange of the three checks, Ridenhour gained relief from any threatened legal action. This argument ignores the fact that Montgomery could have sued at any time on the underlying debt, whether it was holding three smaller checks or one larger one.

The state's last point is that Ridenhour testified he had asked Montgomery to hold the check until he could make it good. This testimony was contradicted by Montgomery. Were we to accept Ridenhour's testimony, the state argues that Ridenhour was buying time and thereby gained an extension of credit by having Montgomery hold the check. Again, the state ignores the fact that this would be true whether Ridenhour had asked Montgomery to hold the smaller checks or the large check. Nothing of value was either given or received by the exchange of checks, the parties remained in exactly the same position as they were before the exchange.

Reversed and dismissed.

HICKMAN, J., dissents.