[No. 41431-3-I. Division One. January 25, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. HUMPHREY AKUNODI ALAMS, *Appellant*.

*Andrew L. Subin*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine* and *Karen L. Rogers, Deputies*, for respondent.

GROSSE, J. — Payment of a past due debt by way of a worthless check constitutes the unlawful issuance of a bank check even though the issuer seeks nothing more than a brief reprieve from the recipient's collection efforts. Viewing the evidence in light most favorable to the State, a jury could have reasonably concluded that Alams sought such a reprieve. Accordingly, we affirm.

## FACTS

This case arises from a "sale lease-back" agreement between Humphrey Alams and Richard Padovan, the owner of Coho Equipment Leasing Company. In September 1994, Padovan agreed to buy Alams' chiropractic equipment for $25,000, and Alams agreed to lease back the equipment from Coho Equipment Leasing Company for $820.91 a month.

Alams made the first payment by check, which was returned for insufficient funds. Alams then gave Padovan a cashier's check, but due to a computational error, the amount paid was $209 short of the amount actually due. In December, Alams wrote Padovan a check for $209 on a closed bank account.

By January, Alams' debt totaled $1,938.02, which Padovan repeatedly attempted to collect. On January 20, 1995, Alams presented Padovan with a check for $1,136, but again the check was drawn on a closed account. After several more attempts to collect payment, Padovan reported the situation to the Everett Police Department. Alams was charged under RCW 9A.56.060 with one count of unlawful issuance of a bank check in an amount exceeding $250.

In its ruling on Alams' motion in limine, the court held that the State could not present evidence that Alams had fraudulently entered into the lease agreement nor could it present evidence regarding whether Alams ever paid off the debt. The court, however, denied Alams' motion to exclude testimony that Alams defaulted on a small business loan during the time period.

During trial, the bank branch manager testified that Alams' account had been closed on January 4, 1995 because it had remained overdrawn for a considerable period of time. Between October 25 and December 22, 1994, the account had 14 overdrafts. She testified that she had conversations with Alams over the phone and in person on several occasions about the overdrafts and about the delinquency on his small business loan. She stated that she kept in contact with him because he was her customer and this was the first of her large loans "to go bad." She further testified that the bank notified Alams of the account closure by mail.

Alams was the sole defense witness. He testified that he had several accounts with the bank and that he shifted money between the accounts during the time frame in question. He stated that he did not recall receiving overdraft or account closure notices. He further stated that he believed that he had enough money to cover the check, but he was not sure, and he did not know exactly how much money he had in his various accounts.

During closing argument, the prosecutor stated:

> The final element which I have to prove in order to prove him guilty is that he acted with intent to defraud Mr. Padovan when he wrote that check. You can infer his intent from what was going on around him. You can infer the intent from what was happening with these accounts. You have to do that, because Mr. Alams never spoke to anybody, prior to today, about what was going on here. He never talked to the police about this case—

The trial court sustained defense objections to the statement and issued a curative instruction. The prosecutor continued:

> I apologize. Except for what he said on the stand, he's not told us what was really going on in his head. We're not psychic. We can't see inside his head back in January 20th of 1995 to know what he intended when he wrote this check. So you have to infer this from what occurred back then and what was going on.

Alams was convicted as charged and sentenced within the standard range. His confinement was converted to community service, and the court ordered the payment of restitution. He appeals, arguing that there is insufficient evidence to support the verdict, the trial court erred in admitting evidence of his previous loan default, and the prosecutor engaged in misconduct.

## DISCUSSION
### I. Sufficiency of the Evidence Supporting Intent to Defraud Element

The offense of unlawful issuance of a bank check includes as an element of the offense the "intent to defraud."[1] Alams contends that the evidence is insufficient to prove this element because he gave Padovan a check in payment of a preexisting, past due debt.

 Alams argues that the intent to defraud element is not met because "the recipient loses nothing, since he or she is still entitled to the money and the identical remedies remain available for nonpayment."[2] In *State v. Bradley*,[3] Bradley likewise argued that there was insufficient evidence of an intent to defraud because payment of a past due debt with a worthless check does not extinguish the recipient's rights.[4] The Court disagreed, holding that REM. REV. STAT. § 2601-2, which for all practical purposes is identical to RCW 9A.56.060, "may be violated by the giving of a worthless check in purported payment of a past due indebtedness."[5] The Court specifically declined to follow contrary case law established in other jurisdictions.[6]

Alams' only attempt to distinguish this case is an argu-

---

[1]RCW 9A.56.060.

[2]Br. of Appellant, at 16.

[3]*State v. Bradley*, 190 Wash. 538, 69 P.2d 819 (1937).

[4]*Id.* at 545.

[5]*Id.* at 546.

[6]*See id.* at 548.

ment that neither he nor Padovan could have felt a sense of insecurity because both knew that Padovan would immediately present the check to the bank for payment. We do not find this argument convincing. Viewing the evidence in light most favorable to the State, the jury could have found that Alams sought a brief reprieve from Padovan's collection efforts. The extent of the reprieve, i.e., the success or failure of the criminal intent, is immaterial.[7] Finding no reasonable distinction between the issue before the *Bradley* court and the issue before this court, we find the evidence sufficient to support the verdict.

## II. Admission of Evidence of Alams' Previous Loan Default

Evidence of a prior bad act is admissible under ER 404(b) to prove, among other things, the actor's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Alams contends that the court's admission of evidence of his small business loan default was an abuse of discretion because the evidence was not admissible to show intent and had little or no probative value. Even assuming the court erred in admitting the evidence, however, the error was harmless.

Evidentiary errors under ER 404(b) are nonconstitutional in nature.[8] An error is reversible, therefore, only if the defendant shows " 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' "[9] Alams has not met his burden.

Alams *admits* that "the evidence was unnecessary to prove the state's theory because a great deal of other evidence of his tenuous financial situation was introduced by

[7] *Id.* at 547.

[8] *State v. Brown*, 113 Wn.2d 520, 554, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4TH 989 (1989).

[9] *Id.* (citations omitted).

the same witness."[10] Moreover, evidence establishing default on a loan has minimal prejudicial effect because it is not inherently the result of bad conduct. Given the testimony presented at trial, we cannot say that, within reasonable probabilities, the outcome of the trial would have been different had the testimony been excluded.

### III. Denial of a Mistrial for Violation of an Order in Limine Based on ER 404(b)

In limine, the trial court excluded testimony establishing that Alams had fraudulently entered into the lease agreement, and testimony as to whether Alams ever paid off his debt to Padovan. Alams contends that Padovan's testimony violated the first order, and that one of the prosecutor's questions violated the second. He asserts that the trial court abused its discretion by rejecting his motion for a mistrial. We agree with the court's conclusion that even assuming error there is not a substantial likelihood that the comments affected the verdict.

Padovan testified, "I got a bill of sale from [Alams] for the equipment. And then we disbursed funds on that bill of sale, which was no good." The defense objected to the statement, and at sidebar the court sustained the objection. Alams did not seek, and the court did not issue, a curative instruction. On redirect, following a question by Alams' attorney concerning Alams' September payment by money order, the prosecutor asked Padovan, "Did Mr. Alams ever give you money orders to cover any of the other checks which were returned account closed?" The defense objected before Padovan could respond, and the court again sustained the objection.

The court found that the statement concerning the bill of sale could lead to a number of different conclusions, rather than a conclusion that Alams had fraudulently sold the equipment to Padovan. The court also found that the prosecutor's question regarding payment by money order

---

[10]Br. of Appellant, at 29.

was not a question as to whether Alams had ever paid the debt. The court denied the motion for a mistrial, stating that there was "little likelihood" that the statement or question would "impact the jury in any way or cause them to act in any emotional or prejudicial fashion." We agree.

Assuming error, the burden is on Alams to show there is a substantial likelihood that the comments affected the verdict. And he fails to do so. We find no abuse of discretion.

## IV. Prosecutor's Closing Argument

Alams has two complaints concerning the prosecutor's closing argument. The first is that the prosecutor violated his Fifth Amendment rights when the prosecutor stated that Alams had never talked to the police about the case. Alams objected to the statement, and the court issued a curative instruction. The second is that the prosecutor shifted the burden of proof by stating that Alams had not told the jury what was really going on in his head. Alams failed to object to this statement, but he argues that the comment was flagrant and ill-intentioned. Even assuming error, the statements were harmless beyond a reasonable doubt.

■ The State agrees that the comment that Alams had never talked to the police was improper, but argues that the error was harmless. " 'A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error.' "[11] Considering only the untainted evidence, we are convinced that the jury, in absence of the error, would have reached the same result.

■ As for the burden-shifting issue, "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes

---

[11]*State v. Ng*, 110 Wn.2d 32, 37, 750 P.2d 632 (1988) (citation omitted).

an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury."[12] Even assuming error here as well and evaluating the propriety of the prosecutor's comment in the context of the entire argument, we find no enduring prejudice.

We find the evidence sufficient to support the verdict. And upon review of the alleged errors, we hold that none, individually or collectively, denied Alams a fair trial. Accordingly, we affirm.

WEBSTER and BAKER, JJ., concur.

Review denied at 137 Wn.2d 1037 (1999).

[12]*State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).