COMMONWEALTH *vs.* RUSSELL W. GOREN.

No. 07-P-1518.

Norfolk. June 6, 2008. - September 19, 2008.

Present: GELINAS, McHUGH, & GREEN, JJ.[1]

*Larceny. Practice, Criminal,* Restitution.

Evidence at the trial of a criminal complaint was insufficient to convict the
   defendant of larceny by check in violation of G. L. c. 266, § 37, where the
   defendant had tendered the checks in question to his landlord in satisfac-
   tion of an antecedent debt (for past rent), rather than contemporaneously
   obtaining money or property or services in return for the checks; therefore,
   the defendant was only responsible for the lesser included offense of at-
   tempted larceny by check [679-682], and this court vacated the order of
   restitution in favor of the landlord, who incurred no loss as a result of the
   bad checks [682].


COMPLAINT received and sworn to in the Dedham Division of
the District Court Department on May 9, 2006.

The case was tried before *Mary Hogan Sullivan*, J.

*Daniel K. Sherwood* for the defendant.

*Alexei Tymoczko*, Assistant District Attorney, for the
Commonwealth.

GREEN, J. In December, 2004, the defendant's company was
approximately $35,000 in arrears on its rent. During that month,
the defendant delivered two checks totaling $8,000 to the land-
lord, ostensibly toward the arrearage. The checks were drawn
on a closed account with a bank that no longer existed, facts the
landlord discovered before attempting to negotiate the checks.
The defendant was tried and convicted on a charge of larceny
by check. See G. L. c. 266, § 37. On appeal, the defendant con-
tends that the evidence was insufficient to support his convic-

---

[1]Justice Gelinas participated in the deliberation on this case prior to his
retirement.

tion as matter of law, arguing that a conviction on that charge may not rest on checks tendered in satisfaction of an antecedent debt. We agree and reduce the defendant's conviction to the lesser included charge of attempted larceny by check.[2]

*Background.* The defendant's company, Goren Printing, had occupied space in the Norwood Commerce Center for more than twenty years, initially under a lease but eventually as a tenant at will. At the times relevant to this case, the monthly rent was $2,450, so that the arrearage as of December, 2004, represented well more than one year's unpaid rent. Before falling into arrears, the defendant typically had paid rent by means of either third-party checks or money orders. The departure from that past practice (by delivering two checks drawn on the company's account), combined with the relatively large size of the checks, led the landlord to ascertain whether they were good before attempting to negotiate them.[3] The landlord attempted to call Cambridgeport Savings Bank, but could not find a listing for that institution. Eventually, the landlord determined that Cambridgeport Savings Bank had no telephone listing because it had been acquired, in August of 2003, by Citizens Bank. Calls to Citizens Bank did not improve the situation; the landlord eventually learned not only that the defendant had no account with Citizens Bank, but also that the account on which the checks were drawn had been closed prior to Citizens Bank's acquisition of Cambridgeport Savings Bank. The landlord attempted to contact the defendant, but was unable to do so until late January of 2005, at which time the defendant and landlord met. The defendant furnished no satisfactory response when asked to explain why he had delivered checks drawn on a closed account, and the meeting ended without resolution. Sometime in February of 2005, the landlord learned that Goren Printing had vacated the premises. Further discussions between the defendant and the landlord were unproductive, and the landlord eventually reported to police the defendant's delivery of the two bad checks.

*Discussion.* Like most States, Massachusetts law imposes criminal consequences on the intentional delivery of checks

[2]We also vacate the order of restitution, as the complainant landlord did not suffer any loss of property as a result of the attempt.

[3]One of the two checks was in the amount of $3,000, and the other was in the amount of $5,000.

drawn against insufficient funds.[4] The provisions of the Massachusetts bad check statute, G. L. c. 266, § 37, are set out in the margin.[5] As provided in the statute, the delivery of a check drawn against insufficient funds generally will be sufficient by itself to support a conviction on a charge of attempted larceny (the insufficiency of funds standing as prima facie evidence of intent to defraud, unless the maker pays the payee in full by other means within two days). The crime increases from attempted larceny to larceny if the maker obtains money, property, or services by means of the check. It is the latter element that the defendant challenges in the present case: the defendant observes that, because he tendered the checks in ostensible payment on an antecedent debt, he obtained no money or property or services in exchange for them.

No Massachusetts case has considered whether a check tendered in payment on an antecedent debt can support conviction on a charge of larceny by check.[6] However, we agree with the defendant that he obtained nothing in fact in exchange for the

---

[4]Of the fifty States, only Rhode Island has no bad check statute.

[5]General Laws c. 266, § 37, as amended by St. 1955, c. 133, provides as follows:

"Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft or order for the payment of money upon any bank or other depositary, with knowledge that the maker or drawer has not sufficient funds or credit at such bank or other depositary for the payment of such instrument, although no express representation is made in reference thereto, shall be guilty of attempted larceny, and if money or property or services are obtained thereby shall be guilty of larceny. As against the maker or drawer thereof, the making, drawing, uttering or delivery of such a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank or other depositary, unless the maker or drawer shall have paid the holder thereof the amount due thereon, together with all costs and protest fees, within two days after receiving notice that such check, draft or order has not been paid by the drawee. The word 'credit,' as used herein, shall be construed to mean an arrangement or understanding with the bank or depositary for the payment of such check, draft or order."

[6]Though not cited by either party, we note that in *Commonwealth* v. *Devlin*, 141 Mass. 423 (1886), the Supreme Judicial Court upheld a conviction on a charge of larceny by check, even though the fraudulent check was not tendered until approximately one hour after the sale of sheep was entered in the records of the auction at which the sale occurred. However, the court rested its hold-

checks he tendered. His occupancy of the premises without payment of rent, though ongoing, had continued for more than one year prior to tender of the checks, and did not depend on their tender in any respect. Moreover, the defendant did not obtain, even temporarily, any reduction in the amount of the arrearage he owed for back rent. The tender of the bad checks did not induce the landlord to part with any property or other item of value, and did not confer any benefit upon the tenant.

The Commonwealth counters the defendant's argument in two ways. First, the Commonwealth observes that the defendant's company remained in possession of the premises for approximately two months after the defendant tendered the checks. However, the facts cannot support any inference that the landlord granted any forbearance to the defendant by reason of the defendant's tender of the checks; indeed, the landlord was suspicious of the checks upon receipt of them, quickly ascertained that they were no good, and never attempted to negotiate them. Moreover, the landlord continued in its attempts to negotiate with the defendant a recovery of the rent arrearage for approximately two years, without initiating legal proceedings, belying any suggestion that any forebearance (or continued occupancy by the tenant) flowed from the tender of obviously invalid checks.[7]

The Commonwealth also contends that the statute does not require a contemporaneous or prospective exchange of money, property, or services to support a conviction of larceny by check. That contention is at odds with the plain language of the statute. The statute clearly and expressly treats the mere delivery of a fraudulent instrument as attempted larceny, and reserves the charge of larceny to those instances in which "money or property or services are obtained *thereby*" (emphasis supplied).[8]

Our conclusion is in accord with the vast majority of States

ing on the contemporaneous nature of the exchange, and the conditional nature of the title conveyed to the buyer pending payment. See *id.* at 431-432.

[7]The record does not reveal when the tenancy formally terminated.

[8]The cases cited by the Commonwealth to support its interpretation of the statute are inapposite. In *Commonwealth* v. *Adelson*, 40 Mass. App. Ct. 585, 587 (1996), fraudulent checks induced the complainants to proceed with the production of promotional videotapes in furtherance of a boxing promotion. Similarly, in *Commonwealth* v. *Solari*, 12 Mass. App. Ct. 993 (1981), the defendant obtained completed videotapes only after tendering the fraudulent checks.

that have considered the question. See the summary of statutes and cases in the Appendix.

Because the defendant challenges only the element requiring that "money or property or services are obtained thereby," the evidence was sufficient to support the lesser included offense of attempted larceny by check, and we remand the matter to the trial court for resentencing on the lesser charge. See *Commonwealth* v. *Gilbert*, 447 Mass. 161, 168-169 (2006).

Finally, because the landlord incurred no loss as a result of the bad checks, the order of restitution must be vacated. See *Commonwealth* v. *McIntyre*, 436 Mass. 829, 834 (2002) (order of restitution must be limited to loss or damage causally connected to the offense).

The judgment of conviction on the charge of larceny by check and the order for restitution are vacated. The case is remanded to the District Court for entry of a judgment on the charge of attempted larceny by check, and for sentencing on that charge.

*So ordered.*

APPENDIX.

Most States' statutes require (like Massachusetts) that property or something of value be obtained in exchange for a fraudulent check, and cases decided under substantially all such statutes have concluded that the statute does not apply to a check tendered in payment of an antecedent debt. See *United States* v. *Pearce*, 7 Alaska 246, 248, 250 (1924) (interpreting an earlier version of Alaska Stat. § 11.46.280 [2006]; current version does not include property requirement); *Ridenhour* v. *State*, 279 Ark. 240 (1983); *Laytner* v. *State*, 239 So. 2d 857, 858 (Fla. Dist. Ct. App. 1970) (interpreting an earlier version of Fla. Stat. ch. 832.05[4] [2007]); *People* v. *Cundiff*, 16 Ill. App. 3d 267, 269 (1973) (interpreting an earlier version of 720 Ill. Comp. Stat. 5/17-1 [2006]; current version explicitly applies to "an amount owed on any credit transaction"); *Martin* v. *Commonwealth*, 821 S.W.2d 95, 97 (Ky. Ct. App. 1991) (interpreting Ky. Rev. Stat. Ann. § 514.040[1][e] [1999]); *State* v. *McLean*, 216 La. 670, 674 (1950) (interpreting an earlier version of La. Rev. Stat. Ann. § 14.71[A][1][a] [2007]; current version explicitly applies "whether the exchange is contemporaneous or not"); *State* v. *Sinclair*, 274 Md. 646, 653-654 (1975) (interpreting an earlier version of Md. Code Ann., Crim. § 8-103[a] [2002]); *Parker* v. *State*, 484 So. 2d 1033, 1035-1036 (Miss. 1986) (interpreting an earlier version of Miss. Code Ann. § 97-19-55 [2006]; current version does not include property requirement); *Hoyt* v. *Hoffman*, 82 Nev. 270, 272-273 (1966) (interpreting an earlier version of Nev. Rev. Stat.

§ 205.130[1] [2007]); *People* v. *Gasbara,* 95 A.D.2d 333, 334 (N.Y. 1983) (interpreting N.Y. Penal Law § 155.05[1], [2][c]); *Kellogg* v. *State,* 551 P.2d 301, 303 (Okla. Crim. App. 1975) (interpreting an earlier version of Okla. Stat. tit. 21, § 1541.1 [2002]), overruled on other grounds by *Broadway* v. *State,* 818 P.2d 1253 (Okla. Crim. App. 1991); *State* v. *Newsom,* 684 S.W.2d 647, 649 (Tenn. Crim. App. 1984) (interpreting an earlier version of Tenn. Code Ann. § 39-14-121[a][1] [2006]); *Norman* v. *State,* 170 Tex. Crim. 25, 26-27 (1960) (interpreting an earlier version of Tex. Penal Code Ann. §§ 31.03, 31.06 [2003]); *Sylvestre* v. *Commonwealth,* 10 Va. App. 253, 257-258 (1990) (interpreting Va. Code Ann. § 18.2-181 [2004]); *State* v. *Stout,* 142 W. Va. 182, 187-188 (1956) (interpreting an earlier version of W. Va. Code § 61-3-39 [2005]). See also *State* v. *Archambeau,* 187 Wis. 2d 502, 505-506 (Ct. App. 1994) (interpreting Wis. Stat. Ann. § 943.24 [2005], which does not apply to "a check given for past consideration"). But cf. *People* v. *Gutierrez,* 1 P.3d 241, 243 (Colo. App. 1999) (interpreting Colo. Rev. Stat. § 18-5-205 [2007], which includes property requirement, to apply to checks tendered to pay antecedent debts, because a provision in an earlier version of the statute explicitly excluding such checks had been deleted).

In *State* v. *Robison,* 147 P.3d 448 (Utah 2006), the Utah Supreme Court (interpreting an earlier version of Utah Code Ann. § 76-6-505 [2003]) concluded that a bad check tendered after delivery of a truck was sufficient to support a conviction of larceny by check, rejecting the defendant's argument that a contemporaneous exchange was required. However, the seller did not mail the title to the truck to the purchaser until after he had received the fraudulent check. See *id.* at 450. In *State* v. *Platt,* 114 N.M. 721, 723 (Ct. App. 1992), the Court of Appeals of New Mexico (interpreting N.M. Stat. Ann. § 30-36-4 [2008]) concluded that the statute is satisfied when the fraudulent check is tendered as part of a contemporaneous transaction, even though the property is delivered before payment is made.

In States where the statute does not require that property be obtained by means of the bad check, courts have typically interpreted the statute to apply to checks tendered to pay an antecedent debt. See *People* v. *Khan,* 41 Cal. App. 393, 395 (1919) (interpreting Cal. Penal Code § 476a); *Clarke* v. *United States,* 140 A.2d 181, 182-183 (D.C. 1958) (interpreting an earlier version of D.C. Code Ann. § 22-1510 [2001]); *Territory* v. *Chong Pang Yet,* 27 Haw. 693, 694 (1924) (interpreting an earlier version of Haw. Rev. Stat. § 708-857); *State* v. *Ringi,* 238 Kan. 523, 527 (1986) (interpreting Kan. Stat. Ann. § 21-3707 [2007]); *State* v. *Madani,* 910 S.W.2d 362, 366 (Mo. App. 1995) (interpreting an earlier version of Mo. Rev. Stat. § 570.120 [2000]); *State* v. *Suber,* 154 Ohio App. 3d 681, 693-694 (2003) (interpreting an earlier version of Ohio Rev. Code Ann. §§ 2913.01[B], 2913.11[B] [2006]); *Commonwealth* v. *Burruss,* 380 Pa. Super. 272, 279 n.3 (1988) (interpreting an earlier version of 18 Pa. Cons. Stat. § 4105 [2000]); *State* v. *Alams,* 93 Wash. App. 754, 758 (1999) (interpreting Wash. Rev. Code § 9A.56.060 [2006]); *Barker* v. *State,* 599 P.2d 1349, 1351 (Wyo. 1979) (interpreting an earlier version of Wyo. Stat. Ann. § 6-3-702 [2007]).

However, in two States, courts have interpreted such statutes not to apply to antecedent debts. See *Reece* v. *Pierce Flooring,* 194 Mont. 91 (1981) (interpreting an earlier version of Mont. Code § 45-6-316 [2007]); *State* v. *Blasi,* 64 N.J. 51, 52-53 (1973) (interpreting an earlier version of N.J. Stat. Ann. § 2C:21-5 [2005]).

Statutes in some States explicitly apply to a bad check tendered to pay an antecedent debt. See Ga. Code Ann. § 16-9-20(a), (f)(6) (2007); Idaho Code § 18-3106(d) (2004); S.C. Code Ann. § 34-11-60(d) (1987). See also *Harris* v. *State*, 378 So. 2d 257, 258 (Ala. Crim. App. 1979) (interpreting an earlier version of Ala. Code § 13A-9-13.1[a] [2005]; current version does not explicitly apply to antecedent debts).

Several States have not determined whether their statute applies to bad checks tendered to pay antecedent debts. See Ariz. Rev. Stat. Ann. § 13-1807 (2001); Conn. Gen. Stat. § 53a-128 (2007); Del. Code Ann. tit. 11, § 900 (2007); Ind. Code § 35-43-5-5 (2004); Iowa Code § 714.1(6) (2006); Me. Rev. Stat. Ann. tit. 17-A, § 708 (2006); Mich. Comp. Laws § 750.131 (1981); Minn. Stat. § 609-535 (2003); Neb. Rev. Stat. § 28-611 (1995); N.H. Rev. Stat. Ann. § 638:4 (2007); N.C. Gen. Stat. § 14-106 (2007); N.D. Cent. Code § 6-08-16.2 (2006); Or. Rev. Stat. § 165.065 (2007); S.D. Codified Laws Ann. § 22-30A-24 (2006); Vt. Stat. Ann. tit. 13, § 2022 (1998). As noted earlier, Rhode Island does not have a bad check statute.